SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
A Professional Corporation
    Debra R. Puebla, #126934
    dpuebla@spcclaw.com
    Ray Tamaddon, #144494
    rtamaddon@spcclaw.com
    Wendy E. Schultz, #150720
    wschultz@spcclaw.com
515 South Figueroa Street, Suite 1470
Los Angeles, California 90071-3331
Tel: (213) 996-4200, Fax: (213) 892-8322

Attorneys for ZURICH AMERICAN
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| THE LAW OFFICE OF ROBERT B. JOBE, P.C., ROBERT BRADFORD JOBE,<br><br>        Plaintiff,<br><br>    vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Defendant. | Case No. 4:24-cv-06325-YGR<br><br>The Hon. Yvonne Gonzalez Rogers<br><br>**DECLARATION OF ADAM FAZIO IN SUPPORT OF DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c); EXHIBIT A**<br><br>[Filed concurrently with Notice of Motion and Motion for Judgment on the Pleadings and Proposed Order]<br><br>Date: **December 3, 2024**<br>Time: **2:00 p.m.**<br>Place: **Courtroom 1 – 4th Floor**<br><br>Action Filed September 9, 2024 |

SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
515 SOUTH FIGUEROA STREET, SUITE 1470
LOS ANGELES, CALIFORNIA 90071-3331
TEL (213) 996-4200 • FAX (213) 892-8322

DECLARATION OF ADAM FAZIO IN SUPPORT OF DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS

## DECLARATION OF ADAM FAZIO

I, Adam Fazio, declare as follows:

1.      I am employed by Zurich American Insurance Company ("Zurich") as Assistant Vice President and manage the Mid-Atlantic Southeast Region for the Management Liability – Public business unit.  I submit this Declaration in support of Zurich's Motion for Judgment on the Pleadings.  I have personal knowledge of the facts stated herein and if called as a witness could and would testify competently to same.

2.      In my capacity as Assistant Vice President, I am familiar with Zurich's document retention policies and how to obtain true and correct copies of Zurich's insurance policies when required.

3.      Attached hereto as Exhibit A is a true and correct copy of Zurich Employment Practices Liability policy number EPL 6541325-14 issued to ADP Total Source, Inc., effective August 1, 2023 to August 1, 2024, retained by Zurich in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this **26** day of October, 2024, at Brookhaven, Georgia.

_____
Adam Fazio

DECLARATION OF ADAM FAZIO IN SUPPORT OF DEFENDANT ZURICH AMERICAN INSURANCE
COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS

SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
515 SOUTH FIGUEROA STREET, SUITE 1470
LOS ANGELES, CALIFORNIA 90071-3331
TEL (213) 996-4200 • FAX (213) 892-8322

# EXHIBIT A



Dear  Policyholder,

Thank you for choosing  Zurich for your  Management  Liability  Product(s).  We  truly appreciate your business  and welcome the opportunity  to work  with  you.

We wanted to inform you that under the terms of this transaction you are entitled to online services and resources that  are designed just for management solutions customers. These resources are available at no  additional  cost  to you  and include loss mitigation tips and techniques, industry-related articles and more. Here are just some examples of what  is available to you:

- **eDiscovery website** – a real-time information tool, including a readiness assessment for this rapidly  growing phenomena

- **Thought leadership materials** – dedicated to your top-of-mind needs, including  timely  webinars  and  engaging white  papers,  even specific  to your  industry segment

- **Security &  Privacy readiness self-assessment** – this  exposure  makes  headlines  daily.    How  ready  is  your organization  for this fast-growing  threat?

- **Strategic Risk Services and Enterprise Risk Management** – on-line information source for related hot topics and ERM videos  to minimize  barriers  to achieving  expected  business  outcomes

To access this information and all other  resources,  simply  visit  www.ZurichMgmtSolutions.com.  Please  be  sure  to have your  policy  number handy.

*Deliver for our customers when it matters most*. At Zurich, that's the promise we make every day.  I thank you  again for choosing  Zurich.


Sincerely,

Brian  Winters
Head of Specialty  Products


© 2011 Zurich American  Insurance  Company.  All rights  reserved.

EXHIBIT A, Page 3

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to yourcustomer.


**INSTRUCTION TO AGENT ORBROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THEPOLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

U-GU-873-A CW  (06/11)
Page 1 of 1

EXHIBIT A, Page 4

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number: (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

U-GU-874-A CW  (06/11)
Page 1 of 1

EXHIBIT A, Page 5

# Important Notice – In Witness Clause



In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                      Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email**: info.source@zurichna.com

---

U-GU-319-F (01/09)

Page 1 of 1



# EPL PEO SELECT

# Employment Practices Liability Policy

# Declarations

Insurance is provided by the following Company: **Zurich American Insurance Company**

**Policy Number:**         **EPL 6541325-14**

**Item 1. Named Insured** and Address:       ADP Total Source, Inc.
One ADP Blvd
Roseland, NJ 07068

**Item 2. Policy Period**:    From 08/01/2023 (Inception date) to 08/01/2024 (Termination Date)
(12:01 a.m. standard time at the address shown in Item 1)

**Item 3**. **Limits of Insurance** and **Retention**:

**I. Coverage Part A – PEO Coverage**
A. Each **Insured Event** Limit:       $2,000,000
B. Total **Policy Period** Limit:       $25,000,000
Self-Insured Retention:       See Coverage Part A

**II. Coverage Part B – Client Company Coverage – Other Than California**
Each **PEO Client Company** Sub-limit: $1,000,000
Total **Policy Period** Limit:       $ Amount included within Coverage Part A Total **Policy Period** Limit
Self-Insured Retention:       See Coverage Part B

**III. Coverage Part C – Client Company Coverage – California**
Each **PEO Client Company** Sub-limit: $1,000,000
Total **Policy Period** Limit:       $ Amount included within Coverage Part A Total **Policy Period** Limit
Self-Insured Retention:       See Coverage Part C

**EPL PEO SELECT
EMPLOYMENT PRACTICES LIABILITY POLICY
CLAIMS MADE
MASTER PREAMBLE**

**THIS POLICY IS A CLAIMS MADE POLICY IN WHICH COSTS OF DEFENSE ARE INCLUDED WITHIN AND SUBJECT TO THE LIMITS OF INSURANCE.**

**THIS POLICY CONTAINS THREE SEPARATE COVERAGE PARTS. EACH COVERAGE PART IS SUBJECT TO AND SHARES THE LIMITS OF INSURANCE OF THE POLICY. LOSS AMOUNTS PAID UNDER ANY COVERAGE PART OF THE POLICY ARE SUBJECT TO AND REDUCE THE LIMITS OF INSURANCE OF THE POLICY.**

**READ THIS POLICY CAREFULLY.**

U-ADP_D-100-A NJ (07/21)
ADP PEO Manuscript Policy
Page 1 of 2

**EPL PEO SELECT**
**EMPLOYMENT PRACTICES LIABILITY POLICY**
**ZURICH AMERICAN INSURANCE COMPANY**

**TABLE OF CONTENTS**

**I.     MASTER PREAMBLE (MANUSCRIPT)**

**II. COVERAGE PARTS**

    **A.  NAMED INSURED PEO COVERAGE PART (MANUSCRIPT)**

    **B.  CLIENT COMPANY COVERAGE PART (MANUSCRIPT)**

    **C.  CLIENT COMPANY COVERAGE PART – CALIFORNIA (MANUSCRIPT)**

**III. ENDORSEMENTS**

    1.  **WORLDWIDE ENDORSEMENT**

    2.  **OFAC ENDORSEMENT**

    3.  **PEO CLIENT COMPANY REFERRAL AND ADDITIONAL COVERAGE ENDORSEMENT**

    4.  **RISK MANAGEMENT SERVICE ENDORSEMENT**

    5.  **PRO-RATA CANCELLATION ENDORSEMENT**

    6.  **SPECIFIC EXCESS ENDORSEMENT**

    7.  **INSURED CO-DEFENDANT ENDORSEMENT**

    8.  **SANCTIONS EXCLUSION ENDORSEMENT**

    9.  **SPECIFIC ENTITY EXCLUSION ENDORSEMENT**

    10. **RUNOFF COVERAGE ENDORSEMENT (For Specific PEO Client Company(ies))**

    11. **RETENTION FOR COVERAGE PARTS B AND C AMENDED**

U-ADP_D-100-A NJ (07/21)
ADP PEO Manuscript Policy
Page 2 of 2



**EPL PEO SELECT**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**CLAIMS-MADE**
**NAMED INSURED PEO**
**COVERAGE PART A**

I.    **PREAMBLE**

**THIS IS A CLAIMS-MADE POLICY IN WHICH DEFENSE COSTS ARE INCLUDED WITHIN AND SUBJECT TO THE LIMITS OF INSURANCE. READ THIS POLICY CAREFULLY.**

Throughout this policy, unless the context otherwise requires, the words **you** and **your** refer to the **Named Insured** as identified in the Declarations and any other person qualifying as an **Insured** under Section III of this policy (**WHO IS AN INSURED**). The words **we**, **us** and **our** refer to Zurich American Insurance Company.

Words appearing in boldface type in this policy shall have the meaning as defined in the **DEFINITIONS** section or elsewhere in this policy.

This policy covers employment related **Wrongful Termination**, **Discrimination**, **Sexual Harassment, Workplace Torts** and **Wrongful Business Environment** liability, all subject to the terms, definitions, conditions, limitations, exclusions and other provisions set forth in this policy.

This policy has been issued by **us** in reliance upon the statements made to **us** by **you** or **your** authorized representative in **your** application for this policy, which application is attached to and forms a part of this policy.

II.   **INSURING AGREEMENT**

A.  **INDEMNITY**

1.  Subject to all of the terms, limitations, conditions, definitions, exclusions and other provisions of this policy, **we** will pay all **Loss Amounts** that the **Insured** is legally obligated to pay because of an **Insured Event** to which this insurance applies. The amount **we** will pay is limited as described in Item 3 of the Declarations and in the Sections of this policy dealing with **LIMITS OF INSURANCE, DEFENSE, SELF-INSURED RETENTION** and **OTHER INSURANCE.** For the avoidance of doubt, the maximum aggregate amount we will pay under all Insuring Agreements on behalf of all **Insureds** for each **Insured Event** is the amount specified in Item 3.I.A. of the Declarations.

2. This policy applies only if:

   **a.** a **Claim** because of an **Insured Event** is first made against any **Insured** during the **Policy Period** as set forth in Item 2 of the Declarations, and

   **b.** The **Insured Event** out of which the **Claim** arises does not happen or commence prior to 8/1/97 or after the **Policy Period** has ended.

3. **We** have the right to investigate and settle up to the applicable Limits of Insurance any **Claim** in the manner and to the extent **we**, in **our** sole discretion, deem proper, subject to the provisions outlined in **Section II. B. 2 d.** Upon receipt by **us** of notice of circumstances which are likely to give rise to a **Claim**, **we** also have the right (but not the duty) to investigate and make such a settlement even before a **Claim** is made.

**B. DEFENSE**

1. **We** have the right and duty to defend any **Claim** because of an **Insured Event** to which this insurance applies made or brought against any **Insured(s)**. The law firm of Jackson Lewis LLP., will be the pre-designated defense counsel for **Claims** covered under this policy and for which the **Named Insured** offers a Legal Defense Benefit as set forth in the Client Services Agreement in effect between the **Named Insured** and a **PEO Client Company**, or in which the **Named Insured** is a named party. The **Named Insured** may change the pre- designated defense counsel for **Claims** covered under this policy and for which the **Named Insured** offers Legal Defense Benefit at its discretion with notice to **us.**

   For any other **Claim** covered under this policy and for which no Legal Defense Benefit is offered to any **Insured, we** shall have the right and duty to assign defense counsel, and we have the right to assign any firm agreed to in writing between **us** and the **Insured**.

   Any attorney retained will be required to cooperate and report to **us** in accordance with procedures established by **us.** All **Defense Costs** shall be paid at reasonable rates determined by case complexity, jurisdictions and comparable rates in **Our** panel of law firms. All retained attorneys will be required to follow **our** litigation management guidelines and to provide status reports to **our** Claims Department. No consent is required by the **Named Insured** for the settlement of any **Claim** for which no Legal Defense Benefit is offered; however, the **Named Insured** must be notified by **us** prior to settlement of any **Claim** for which no Legal Defense Benefit is offered.

2. 
   **a.** **Our** duty to defend any **Claim** ends when the Limits of Insurance applicable to that **Insured Event** (Item 3. I. A of the Declarations) or to the **Policy Period** Limit (Item 3. I. B of the Declarations) have been exhausted.

**b.** If the **Policy Period** Limit (Item 3. I. B of the Declarations) is exhausted, **we** will notify the **Named Insured** of all outstanding **Claims** so that the **Insured** can assume control of the defense of all such **Claims**.

**c.** In the event of exhaustion of the per **Insured Event** Limit and/or the total **Policy Period** Limit (Item 3. I. A. or B. of the Declarations,) so that a transfer of the control of the defense from **us** to **you** becomes appropriate, **we** agree to continue the defense of the **Claim(s)** during that reasonable period of time necessary for **you** to assume control of the defense. However, **you** agree that, by so doing, **we** do not waive or surrender any of **our** rights including the right to withdraw from the defense of such **Claim(s)**. **You** also agree to promptly reimburse **us** for the expenses **we** incur in continuing to conduct the defense during the transition period from the time the applicable Limits of Insurance were exhausted until the time **you** have assumed such defense.

**d.** In the event that a claimant offers a settlement and **we** recommend that such settlement be accepted, but the **Named Insured** withholds consent to so settle and the **Claim** later results in a judgment or settlement in excess of the amount of the earlier settlement offer, then the **Named Insured** shall be subject to a 20% coinsurance obligation with respect to all **Loss Amounts** in excess of the greater of 1) the Self-Insured Retention, or 2) the amount of such settlement offer and **Defense Costs** incurred to that time. The **Loss Amounts we** will pay is limited as described in item 3 of the Declarations and in the Sections of the policy dealing with LIMITS OF INSURANCE, DEFENSE, RETENTION and OTHER INSURANCE.

**e.** The **Defense Costs** are not in addition to but rather are included within and subject to the Limits of Insurance.

## C. OTHER BENEFITS

1. **Pre-judgment Interest**

   **We** shall pay the amount of pre-judgment interest imposed on a verdict. However, **our** obligation to pay pre-judgment interest shall not be in addition to the applicable Limits of Insurance but rather shall be within and subject to said Limits of Insurance.

2. **Post-judgment Interest**

   **We** shall pay the entire amount of post-judgment interest calculated upon the amount for which **we** are liable under this policy until such time as **we** have paid or tendered such amount. However, **our** obligation to pay post-judgment

interest shall not be in addition to the applicable Limits of Insurance but rather shall be within and subject to said Limits of Insurance.

### III.    <u>WHO IS AN INSURED</u>

A. **Individual.** If **you** are shown in the Declarations as an individual, **you** are insured only for the conduct of a business of which **you** are the sole owner.

B. **Corporation.** If **you** are shown in the Declarations as a corporation or organization other than a partnership or joint venture, **you**, and any entity in which **you** own a 50.1% or greater interest at the time of Inception Date of this policy or which is identified in the Declarations or by endorsement to this policy, are an **Insured**. **Your** officers and directors are **Insureds,** but only with respect to their duties as **your** officers or directors.

C. **Partnership or joint venture.** If **you** are shown in the Declarations as a partnership or joint venture, **you** are an **Insured**. **Your** partners or joint ventures are also **Insureds** but only for the conduct of **your** business.

   However, no person or organization is covered for the conduct of any current or past partnership or joint venture not named in the Declarations.

D. **Acquisitions.** Any organization that **you** newly acquire or form during the **Policy Period** which at the time of acquisition or formation constitutes less than 20% of the overall total E**mployee** count of the **Insured** becomes an **Insured** when **you** first acquire at least 50.1% of it, but no newly acquired or formed organization is covered for any **Loss Amount** that results from an **Insured Event** that happened or commenced before **you** acquired or formed it.

   Any organization that **you** newly acquire or form during the **Policy Period,** which at the time of acquisition or formation constitutes 20% or more of the overall total **Employee** count of the **Named Insured** becomes an **Insured** when you own at least 50.1% of it, but no newly acquired or formed organization is covered for:

   1. any **Loss Amount** that results from an **Insured Event** that happened or commenced before **you** acquired or formed it, and

   2. more than ninety (90) days or the remainder of the **Policy Period,** whichever is less, unless the **Named Insured** gives **us** written acceptance of any special terms, conditions, exclusions, or additional premium charge **we** may require.

In the event of an acquisition that exceeds 20% of overall total **Employee** count at the time of the acquisition, We retain the right to charge an additional premium, calculated on a pro-rata basis, based on and no more than, that of the charged rate per worksite employee at the inception of the **Policy Period** unless the parties agree otherwise. This rate applies only to **Employees** in excess of 20% of overall total **Employee** count at the time of the acquisition.

E.  **Employees. Employees** of the **Named Insured** are **Insureds** but only  for  the conduct of business within the scope of their employment. **Employees'** status as **Insureds** will be  determined  as  of  the  date  of  the  alleged  **Discrimination**,  **Sexual  Harassment**, **Wrongful Termination**, **Workplace Torts**, or **Wrongful  Business Environment**.

F.  **Spouses, Estates, Heirs, Legal Representatives and Domestic  Partners.**  The lawful spouse (whether by statutory or common law), estate, heirs,  legal representatives or person recognized by law or the **Named Insured** as a  domestic partner of an **Insured** are  **Insureds**  when  they  suffer  loss  arising  from  employment- related  **Wrongful Termination, Discrimination, Sexual Harassment Claim(s),** or **Wrongful Business Environment** otherwise covered by this policy that arise  solely out  of their  status  as the  spouse,  estate,  heir or  legal  representative of an  **Insured.** This includes **Claims** that seek damages recoverable from  marital  community property and property jointly held by an **Insured** or the spouse. The lawful spouse (whether by statutory or  common law),  estate,  heirs and  legal  representatives  of an **Insured** are not **Insureds** when the **Claim** at issue  arises  from any  actual or alleged wrongful act of the lawful spouse, estate, heirs and legal representative of an **Insured.**

G.  **Additional Insured.** The following entities are included as an additional **Insured** solely with respect to **Claims** for actual or alleged **Insured Events** by an **Insured** other than  the  following  entities  and  further  provided  that  the  following  entities  are included wherever coverage applies to the **Named Insured:**

Automatic Data Processing, Inc.
ADP TotalSource Group, Inc.
ADP Atlantic, Inc.
ADP, LLC

Provided that any such **Claim**  is  also  made  and  continuously maintained  against an  **Insured** other than said entities.


IV.  **EXCLUSIONS**

A.  **Workers' Compensation.**    This  policy  does  not  cover  any  obligation  under a workers' compensation, disability benefits or unemployment compensation law, or  any similar  law.    This exclusion shall not apply to a  **Claim** brought  by  an **Employee(s)** alleging **Wrongful Termination** or retaliation of the claimant by  the **Insured** on account of the claimant's exercise of rights pursuant to any such statute, law, rule or regulation.

B.  **Liability  Assumed  by Contract.**   This policy does not cover any **Loss Amount** which the **Insured** is obligated to pay by reason of the assumption of another's liability

for an **Insured Event** in a contract or agreement.

This exclusion shall not apply to liability for damages because of an **Insured Event** that the **Insured** would have had even in the absence of such contract or agreement, or to **Claim(s)** for indemnification or contribution by **PEO Client Company(ies)** against the **Named Insured** arising from **Claims** by **Worksite Employee(s)** as defined in Coverage Parts B and C.

C. **Employee Retirement Income Security Act.** This policy does not cover any liability imposed on the **Insured** under the Employee Retirement Income Security Act of 1974, Public Law 93-406, or any amendments thereto ("ERISA"). Notwithstanding the preceding statement, a **Claim** made by an **Employee(s)** against the **Insured** alleging **Wrongful Termination, Discrimination** or **Workplace Torts** (retaliation in violation of Section 510 of ERISA) shall be covered. However, **we** will not pay as **Loss Amounts** the benefits, pensions, insurance or other rights sought by an **Employee(s)** under any ERISA benefit plan unless the loss is caused by an **Insured Event**.

D. **Strikes and Lockouts.** This policy does not cover any **Loss Amount(s)** or costs arising out of or associated with a lockout, strike, picket line, replacement or other similar actions in connection with labor disputes or labor negotiations. This exclusion shall not apply to a **Claim** brought by an **Employee(s)** alleging **Wrongful Termination** or retaliation as a result of strike activity or union involvement.

E. **W.A.R.N. Act.** This policy does not cover any liability arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), or any amendment thereto, or any similar federal, state or local law. This exclusion shall not apply to a **Claim** brought by an **Employee(s)** alleging **Wrongful Termination** or retaliation of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such statute, law, rule or regulation.

F. This policy does not apply, other than **Defense Costs** incurred by or on behalf of the **Named Insured,** with respect to liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person.

G. This policy does not apply, other than **Defense Costs** incurred by or on behalf of the **Named Insured**, to damages alleged to be owing under, or arising out of, or related to an express contract of employment or express obligation to make payments.

H. This policy does not cover any **Loss Amounts** or costs arising out of or associated with any alleged violation of the obligations or duties pursuant to the Fair Labor Standards Act (except the Equal Pay Act) and any other law concerning wage and hour practices, including, but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices. This exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the

**Insureds** on account of the claimant's exercise of rights pursuant to any such law.

I. **Biometric Information Claim.** This policy does not cover any **Loss Amount** or **Defense Costs** based upon, arising out of or attributable to any **Biometric Information Claim**.

V. <u>**LIMITS OF INSURANCE**</u>

A. **Each Insured Event Limit.**

The amount shown as the Each **Insured Event** Limit in Item 3. I. A. of the Declarations is the most **we** will pay for all **Claims** made or brought arising out of one **Insured Event**, regardless of the number of **Claims** made, claimants, or **Insureds** against whom such **Claims** are made.

B. **Total Policy Period Limit.**

Subject to the Each **Insured Event** Limit, the amount shown as the Total **Policy Period** Limit in Item 3. I. B. of the Declarations is the most **we** will pay under this policy for all **Claims** made or brought during the **Policy Period**.

C. The Amount shown in the Declarations as Each **PEO Client Company** Sublimit is the most **we** will pay on behalf of each **PEO Client Company** for all **PEO Client Company Claims,** regardless of the number of claimants or **Insureds** against whom such **PEO Client Company Claim(s)** are made during each **Policy Period**. The Each **PEO Client Company Sublimit** is contained within and limited by the total policy period limit and is not in addition to the total policy period limit. **The** Each **PEO Client Company Sublimit** applies on an annual basis.

VI. <u>**WHEN COVERAGE IS PROVIDED**</u>

A. Subject to the other provisions of this policy, including those regarding **Limited and Extended Reporting Periods**, if applicable, this policy applies only to **Claims** first made against any **Insured** during the **Policy Period**.

B. A **Claim** shall be considered to be made on the earlier of:

1. the date any **Insured** receives a written notice of a **Claim** being made against any **Insured** seeking damages covered by this policy; or

2. the date **we** make a settlement on account of an **Insured Event** but in advance of written **Claim** being made.

C. All **Claims** arising out of the same **Insured Event** and all **Insured Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause

or series of causally connected facts, circumstances, situations, events, transactions or causes, shall be deemed one **Claim**, and all such **Claims** shall be deemed to be first made when the earliest of such **Claims** is first made, whether before or during the **Policy Period**. Only the policy in effect at the time such **Claim** is first made shall apply to such **Claim**.

## VII.    **DEFINITIONS**

A. **Claim** means a written demand or notice received by an **Insured** alleging an **Insured Event** in which damages likely to be covered by this policy are alleged. **Claim** includes a civil action, an administrative proceeding, or an alternative dispute resolution proceeding to which **you** must submit or to which **you** submit with **our** consent. **Claim** shall include a proceeding for injunctive or non- monetary relief. **Claim** shall not include labor or grievance arbitration subject to a collective bargaining agreement. A class action lawsuit is considered one **Claim.**

B. **Client Services Agreement** means a contractual agreement between the **Named Insured** and a **PEO Client Company** which defines the responsibilities of the **Named Insured** and a **PEO Client Company** with respect to the **Named Insured's** provision of professional employer organization (PEO) services to a **PEO Client Company**. Pursuant to the **Client Services Agreement**, the **PEO Client Company** is primarily responsible for supervision over the work product, and the **Named Insured** assumes certain employer and administrative responsibilities with respect to payroll, benefits, and other human resource functions on an ongoing bases.

C. **Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement, defense of a specific **Claim**, including attorney fees and expenses, the cost of legal, administrative, or alternative dispute resolution proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the Limit of Insurance that applies: **we** have no obligation to furnish such bonds), all reasonable expenses that any **Insured** incurs at **our** request while helping **us** investigate or defend a **Claim** and, subject to Section II, C of this policy, all costs taxed against any **Insured** in a suit.

Salaries and expenses of any **Insured's Employee(s)** shall not be deemed to be covered **Defense Costs** except that the Self-Insured Retention will be reduced by $5,000 for the in- house preparation by the **Named Insured,** or by any law firm assigned by the **Named Insured,** of a response to any governmental agency involving a **Claim** regarding an **Insured Event** (e.g., Equal Employment Opportunity Commission position statement). This $5,000 reduction applies for each **Claim** involving an **Insured Event**.

**Defense Costs** are included within, and are not in addition to, the applicable Limits of Insurance.

D. **Discrimination** means termination of an employment relationship or a demotion or a

failure or refusal to hire or promote or otherwise to take any action against any individual with respect to his or her compensation, terms, conditions, privileges or opportunities of employment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation or other protected category or characteristic established pursuant to any applicable United States federal, state, or local statute or ordinance.

E. **Employee** means an individual whose labor or service is engaged by and/or directed by an **Insured.** This includes past, present, part-time, seasonal and temporary **Employees** as well as any individual employed in a supervisory, managerial, or confidential position. **Supervisory Employee** means an officer or director of an **Insured** or any **Employee** of an **Insured** who has authority to employ or terminate the employment of other **Employees** of an **Insured**.

F. **Insured Event** means any act or omission of **Discrimination**, **Sexual Harassment**, **Wrongful Termination**, or **Workplace Torts** actually or allegedly committed by an **Insured** as an **Employee** or director of the **Insured**. **Insured Event** also includes an **Insured's** customer, client, or other individual alleging **Wrongful Business Environment** by an **Insured.**

G. **Loss Amount** means all forms of compensatory damages, monetary damages, statutory damages, multiplied damages, punitive or exemplary damages, judgments, settlements, statutory attorney fees, and **Defense Costs** arising out of **Claim(s)** alleging **Discrimination**, **Sexual Harassment, Wrongful Termination, Workplace Torts** or **Wrongful Business Environment**.

It is agreed that the law of the jurisdiction most favorable to the insurability of punitive or exemplary damages shall control for the purpose of resolving any issue or dispute regarding whether these damages are insurable under this policy.

**Loss Amount** shall not include taxes, criminal fines or penalties.

**Loss Amount** also shall not include payment of insurance plan benefits claimed by or on behalf of any retired **Employee**, or that a claimant would have been entitled to as an **Employee** had the **Insured** provided the claimant with a continuation of insurance; provided however that **Loss Amount** shall not include amounts deemed uninsurable under the law in the jurisdiction most favorable to the **Insured**.

**Loss Amount** also shall not include amounts awarded pursuant to a labor or grievance arbitration pursuant to a collective bargaining agreement.

**Loss Amount** also shall not include vested and non-vested stock options, retirement benefits, severance pay, bonus, prerequisites, fringe benefits, vacation days or sick days unless the loss is caused by an **Insured Event**.

**Loss Amount(s)** do not cover those amounts arising from an express or written employment agreement.

H. **PEO Client Company** means an entity that has entered into a **Client Services**

**Agreement** with the **Named Insured**, thus becoming a client of the **Named Insured** and the worksite employer of the **Worksite Employee(s)**.

I.  **Policy Period** means the period of time commencing with the Inception Date shown in Item 2 of the Declarations and the earlier of the Termination Date shown in Item 2 of the Declarations or the date on which this policy is terminated by cancellation by **you** or by **us**.

J.  **Sexual Harassment** means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that: (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance or creates an intimidating, hostile, or offensive work environment.

K.  **Workplace Torts** including without limitation retaliation, defamation, infliction of emotional distress, invasion of privacy, wrongful discipline, wrongful reference, failure to grant tenure, employment related misrepresentation, wrongful failure to promote, wrongful deprivation of career opportunity or wrongful demotion, or negligent hiring, negligent retention, negligent evaluation, negligent supervision, negligent training, workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications by any **Insured**

L.  **Worksite Employee** means a person co-employed by the **Named Insured** and a **PEO Client Company** and covered by a **Client Services Agreement**, engaged to perform services on behalf of the **PEO Client Company's** business. **Worksite Employee** also includes a Self Employed Individual or a Non-Paid Owner who has signed the **Named Insured's** "Self-Employed Individual and Non-Paid Owner Participation Addendum" to the **Client Services Agreement**.

M.  **Wrongful Termination** means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment. **Wrongful Termination** shall include but shall not be limited to breach of an implied employment contract, retaliation, or the filing of a claim under federal, state, local or foreign "whistleblower" laws.

N.  **Wrongful Business Environment** means allegations of direct, indirect, intentional, or unintentional acts:

1. in discriminating against any individual because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation or other protected category or characteristic established pursuant to any applicable United States federal, state, or local statute or ordinance;

2. involving unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive business environment; or

3. any other civil rights violations committed by an **Insured**.

and brought by the **Insured's** customer(s), client(s) or any other individual(s), class of individuals or group other than a **Worksite Employee** or **Employee** against the **Named Insured**.

O. **Biometric Information** means any information used to identify a natural person based on an anatomical scan or any record of biological pattern or characteristic, including but not limited to such natural person's retina or iris scan, fingerprint, voiceprint, or any record of hand or face geometry. **Biometric Information** shall not include any information that is protected or regulated pursuant to the Health Insurance Portability and Accountability Act of 1996.

**Biometric Information Claim** means a **Claim** brought or maintained against an **Insured** based upon, arising out of or attributable to a violation of any federal, state or local law that regulates or restricts the storage, collection or use of **Biometric Information**.

## VIII. <u>SELF-INSURED RETENTION</u>

### A. Self-Insured Retention

**Our** obligation under the coverages provided by this policy to pay **Loss Amounts** on behalf of any **Insured** shall apply only to **Loss Amounts** in excess of the Self- Insured Retention as stated in the Declarations and subject to the Limits of Insurance stated in the policy. The terms of this policy with respect to **our** rights and duties relative to investigation, settlement, duty to defend and selection of defense counsel apply in excess of the application of the **Insured's** Self-Insured Retention.

B. The **Named Insured** shall notify **us** as soon as practicable in writing of any **Claim,** or suit to which this policy applies, including those **Claims** or suits covered by Coverage Parts B or C, in which, in the opinion of the **Named Insured,** the reasonable estimated or actual value of the **Loss Amounts** exceeds 50% of the Self- Insured Retention Amount. Section X. Conditions shall only apply when the **Named Insured** determines that the reasonable estimated or actual value of the **Loss Amounts** exceeds 50% of the Self-Insured Retention.

C. The Self-Insured Retention amount is as follows: $25,000 per **Claim** for settlement or judgments and $75,000 per **Claim** for **Defense Costs**. In the

event that a **Claim** is brought against multiple **Insureds** arising out of the same **Insured Event**, the Self-Insured Retention will apply as if there was a single **Claim**. In the event of a **Claim**(s) brought by multiple claimants arises out of the same facts and circumstances, the Self-Insured Retention will apply as if there was a single **Claim.** In the event that a single **Claim** arising out of the same **Insured Event** is provided coverage and accepted under this Coverage Part and Coverage Parts B or C, the Self-Insured Retention under Coverage Parts B or C shall apply.

**D.** The **Named Insured** shall reimburse **us** promptly for any amounts **we** have paid which are within the Self-Insured Retention amount.

## IX.    LIMITED AND EXTENDED REPORTING PERIODS

**A.** **Limited Reporting Period** means the sixty (60) day period starting with the end of the **Policy Period**. Any **Claim** which is first made during the **Limited Reporting Period** because of an **Insured Event** which happened or commenced after August 1, 1997 because of an act or incident which happened or commenced prior to the end of the **Policy Period** shall be deemed to have been made on the last day of the **Policy Period**.

**B.** When the **Limited Reporting Period** will apply. The **Limited Reporting Period** will apply only if this insurance is cancelled by **us** or not renewed by **us** for any reason other than **your** non- payment of a premium or Self-Insured Retention, or non-compliance with the terms and conditions of this policy. An increase in premium or other changes in the terms and conditions of this coverage shall not constitute a non-renewal for the purpose of this provision. However, the **Limited Reporting Period** will not apply to **Claims** if other insurance you buy covers them or would cover them if its Limits of Insurance had not been exhausted.

**C.** How to add an **Extended Reporting Period**. If the **Limited Reporting Period** applies, an **Extended Reporting Period**, starting at the end of the **Limited Reporting Period**, can be added by means of an **Extended Reporting Period** Endorsement and the payment of an additional premium. The **Extended Reporting Period** Endorsement attached to this policy sets forth the terms and conditions of the **Extended Reporting Period**.

Any **Claim** which is first made during the **Extended Reporting Period** because of an **Insured Event** which happened or commenced after August 1,1997 because of an act or incident which happened or commenced prior to the end of the **Policy Period** shall be deemed to have been made on the last day of the **Policy Period**.

The **Extended Reporting Period** Endorsement will not be issued unless **we** receive a written request for it within sixty (60) days after the end of the **Policy Period**, nor will it take effect unless the additional premium is paid when due.

The additional premium for the **Extended Reporting Period** will be determined by

**us** pursuant to **our** underwriting review and discretion.

**D.** How the Limits of Insurance apply to the **Limited** and **Extended Reporting Periods**.

The Limits of Insurance that remain at the end of the **Policy Period** after payment of all **Loss Amounts** and **Defense Costs** made on account of **Claims** made during the **Policy Period** are not reinstated, renewed or increased for **Claims** first made or brought during the **Limited Reporting Period** or the **Extended Reporting Period**. Any **Claim** first made or brought during the **Limited Reporting Period** or the **Extended Reporting Period** will be deemed to have been first made on the last day of the **Policy Period** which terminated immediately prior to the start of the **Limited Reporting Period**.

## X.    **REPORTING and NOTICE**

It shall be a condition precedent to our obligations under this policy that the Insureds comply with all of the following conditions.

**DUTIES IN THE EVENT OF CLAIM OR SUIT AND OPTIONAL CIRCUMSTANCE REPORTING**

**Notice of Claim or Suit-** The **Named Insured** shall give **us** written notice as soon as practicable after the **Named Insured** becomes aware of any **Claim** covered by this policy including **Claims** covered by the Client Company Coverage Parts, but in no event later than 120 days after expiration of the **Policy Period**. Should the **Named Insured** seek to report a **Claim** later than 120 days after the expiration of the **Policy Period** in which it was first made, however, such **Claim** will then be deemed first made during the **Policy Period** in which it was reported to us. Provided, however, in the event the policy provides for a Self-Insured Retention, the **Named Insured** shall give **us** written notice as soon as practicable after the **Named Insured** becomes aware of any **Claim** covered by this policy, including **Claims** covered by the Client Company Coverage Parts in which in the opinion of the **Named Insured** the anticipated **Loss Amounts** exceeds 50% of the total amount of the Self-Insured Retention shown in ITEM 3 of the Declarations of this policy. For the purpose of this Section X.A, the **Named Insured** shall not be deemed to be aware of any **Claim** until the Vice President of Risk Management Services of ADP Total Source, Inc. has actual knowledge of such **Claim**.

Notice of **Claim** shall include as much detail as possible and shall include:

1. Copies of any charges, demands, notices, summonses, or legal papers received in connection with the **Claim**

2. Such records and other information pertaining to the **Claim** as the Company shall reasonably require.

**Optional Circumstance Reporting-** If, during the **Policy Period** the **Named Insured**

becomes aware of any circumstances which may reasonably be expected to give rise to a **Claim** covered by this policy, the **Named Insured** may give the Company written notice as soon as practicable, and such notice shall include:

1. Description of the circumstances including the reason for anticipating such a **Claim.**

2. The identity of the person(s) involved in the circumstances and any witnesses thereto. If the circumstances involve a group or class of individuals, the identity of the lead claimant shall satisfy this condition.

3. The date or general time frame in which the circumstances allegedly took place.

If notice of circumstances conforming to the requirements of this section is made during the **Policy Period,** then any resulting **Claim** which is subsequently made against the **Named Insured** by the individual(s) identified pursuant to the above, or

by their estates, heirs, or legal representatives or any actual or alleged beneficiary, shall be considered to be a **Claim** made within the **Policy Period.**

## XI.  CONDITIONS

### A.  OTHER INSURANCE

1. **Primary Insurance**-Unless expressly written to be excess over other applicable insurance, it is intended that this insurance be primary with respect to **Wrongful Termination, Discrimination, Sexual Harassment** and **Workplace Torts**.

2. **Excess Insurance**- When this insurance is specifically written to be excess of other insurance, **we** will have no duty to defend any **Claim** that any other insurer has a duty to defend until such time as the underlying insurance is exhausted by payment of **Loss Amounts** that would, in the absence of such primary policy, be recoverable under this policy. When this policy is excess, **we** will pay only that amount, in excess of the primary insurance, any deductible or self insured retention in connection with the primary insurance, and the Self-Insured Retention amount set forth in this policy.

### B.  VOLUNTARY PAYMENTS

No **Insured** shall, except at the **Insureds'** sole cost, make any payment, assume any obligation or incur any expense without **our** consent.

### C.  REPRESENTATIONS

By accepting this policy, you agree that:

1. to the best of **your** knowledge, the statements in the Application and Declarations are accurate and complete;

2. those statements are based upon representations **you** made to **us**;

U-ADP-D-100-A NJ (07/21)
ADP PEO Manuscript Policy – Coverage Part A
Page 14 of 17

EXHIBIT A, Page 23

3. **we** have issued this policy in reliance upon **your** representations; and

4. the representations made are binding on the **Named Insured**, but are not binding on any individual **Insured** who did not sign the Application.

## D. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any **Insured** has rights to recover all or part of any payment **we** have made under this policy, those rights are transferred to **us**. The **Insured** must do nothing after an **Insured Event** or a **Claim** to impair them. At **our** request, the **Insured** will transfer those rights to **us** and help **us** enforce them.

## E. BANKRUPTCY

The bankruptcy, insolvency or inability to pay of an **Insured** or of an **Insured's** estate will not relieve **us** of **our** obligations under this policy. However, neither shall such bankruptcy, insolvency or inability to pay increase **our** liability with respect to the Self-Insured Retention, nor in any other way.

## F. CANCELLATION

1. The **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

2. **We** may not cancel this policy except for nonpayment of premium.

3. If **we** cancel this policy for nonpayment of premium, **we** will mail or deliver to the Vice President of Risk Management of the **Named Insured** at 10200 Sunset Dr., Miami, FL 33173or its last mailing address known to **us** written notice of cancellation at least 10 days before the effective time of cancellation

4. Notice of cancellation will state the effective time of cancellation. The **Policy Period** will end at that time.

5. If this policy is cancelled, **we** will promptly send the **Named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **Named Insured** cancels, **we** shall retain a minimum earned premium of 25% of premium. If the **Named Insured** cancels this policy, the earned premium will be computed in accordance with the customary short-rate table and procedure, or the minimum earned premium stated herein, whichever is greater. The return or tender of a return premium shall not be a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

6. If notice is mailed, receipt by the Vice President of Risk Management of the **Named Insured** at 10200 Sunset Drive, Miami, FL 33173 or its last known mailing address will be sufficient proof of notice.

7. If any law controlling requires a longer period of notice by **us**, **we** will give the longer notice.

### G. CHANGES

1. This policy contains all the agreements between **you** and **us** concerning the insurance afforded. The **Named Insured** shown in the Declarations is authorized by all other **Insureds** to negotiate changes in the terms of this policy with **us** and to receive and give all notices under this policy. This policy's terms can be

   amended or waived only by endorsement issued by **us** and made part of the policy.

2. In the event that **we** shall announce either: (1) a new Employment Practices Insurance policy form; or (2) an enhancement of coverage endorsement to this policy form, which is to be made available to all **Insureds** and for which no additional premium is required, then the **Named Insured** shall have the right to such new policy or such new coverage enhancement endorsement subject to all underwriting information or particulars as the Insurer may require for such new policy enhanced coverage.

### H. PREMIUMS

The **Named Insured** shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. will be the payee for any return premiums **we** pay.

### I. LEGAL ACTION AGAINST US

1. No person or organization has a right under this policy:

   a. to join **us** as a party or otherwise bring **us** into a suit asking for damages from any **Insured**; or

   b. to sue **us** on this policy unless all of its terms have been fully complied with.

2. A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against the **Insured** obtained after an actual trial, but **we** will not be liable for any **Loss Amount** that is not payable under the terms of this policy or that is in excess of the applicable Limits of Insurance. An agreed settlement means a settlement and release of liability signed by **us**, the **Insured** and the claimant or the claimant's legal representative.

### J. TAKEOVER OF INSURED

In the event 51% or more of the controlling interest of the **Named Insured** is changed during the **Policy Period**, then coverage under this policy shall continue for 120 days after completion of such change in control. From that point forward, such insurance as

is afforded by this policy shall apply only to **Claims** which had first been made prior to that change in control.

### K.  SERVICE OF SUIT

It is agreed that in the event of **our** failure to pay any amount claimed to be  due hereunder, **we**, at the request of the **Insured**, will submit to the jurisdiction of a  court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to  commence

an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to  seek  a  transfer of a  case  to another court as permitted by the laws of the United States or of any state in  the  United States. It is further agreed that service of process may  be  made upon  General Counsel, Law Department, Zurich American Insurance Company, 1299  Zurich Way, Schaumburg, Illinois 60196, or his or her representative, and that in any suit instituted against **us** upon this policy, **we**  will  abide  by  the  final decision of such court or of an appellate court in the event of any  appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which  makes  provision  therefore, **we**  hereby  designate  the  Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose  in the statute, or his or her successor or successors in office as **our** true and  lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of **you** or any beneficiary hereunder arising  out of this contract of insurance, and hereby designate the General Counsel, Law Department,  Zurich American Insurance Company, 1299 Zurich Way, Schaumburg, Illinois 60196, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

### L.  CHOICE OF VENUE; CHOICE OF LAW

This policy shall be construed in accordance with and governed by the laws of  the State of California, without regard to conflict of law principles of any  state.  The parties agree that the Superior Court of California Court, County of Los Angeles – Central District  is an  appropriate  venue  for  any  legal  proceedings  concerning  disputes  over  the construction or application of the policy.



**EPL PEO SELECT**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**CLAIMS-MADE**
**CLIENT COMPANY**
**COVERAGE PART B**

I.    **PREAMBLE**

**THIS IS A CLAIMS-MADE POLICY IN WHICH COSTS OF DEFENSE ARE INCLUDED WITHIN AND SUBJECT TO THE LIMITS OF INSURANCE. READ THIS POLICY CAREFULLY.**

Throughout this policy, unless the context otherwise requires, the words **you** and **your** refer to the **Named Insured** as identified in the Declarations and any other person qualifying as an **Insured** under Section III of this policy (**WHO IS AN INSURED**). The words **we**, **us** and **our** refer to Zurich American Insurance Company.

Words appearing in boldface type in this policy shall have the meaning as defined in the **DEFINITIONS** section or elsewhere in this policy.

This policy covers employment related **Wrongful Termination**, **Discrimination, Sexual Harassment** and **Workplace Torts** liability, all subject to the terms, definitions, conditions, limitations, exclusions and other provisions set forth in this policy.

This policy has been issued by **us** in reliance upon the statements made to **us** by **you** or **your** authorized representative in **your** application for this policy, which application is attached to and forms a part of this policy.

II.   **INSURING AGREEMENT**

A.  **INDEMNITY**

1.  Subject to all of the terms, limitations, conditions, definitions, exclusions and other provisions of this policy, **we** will pay all **Loss Amounts** that the **Insured** is legally obligated to pay because of an **Insured Event** to which this insurance applies. The amount **we** will pay is limited as described in Item 3 of the Declarations and in the Sections of this policy dealing with **LIMITS OF INSURANCE, DEFENSE**, **SELF-INSURED RETENTION** and **OTHER INSURANCE**.

2.  Subject to the other provisions of this policy, it is agreed that coverage only applies to **Claims** first made against any **Insured** during the **Policy Period**. Coverage is provided for a **PEO Client Company Claim** only if:

a.  The claimant is a **Worksite Employee**, or an applicant for employment, of the **Named Insured** and **PEO Client Company** or a former **Worksite Employee** of the **Named Insured** and **PEO Client Company;** and the

EXHIBIT A, Page 27

**Claim** is brought by or on behalf of said **Worksite Employee** or applicant for employment, and

b. The **Named Insured, PEO Client Company** or other Insured identified in Section III are named in the **PEO Client Company Claim** and the **PEO Client Company Claim** alleges **Discrimination**, **Sexual Harassment, Wrongful Termination** or **Workplace Torts** against the **Named Insured,** the **PEO Client Company or other Insured identified in Section III;** and

c. The Insured identified in Section III against whom the **PEO Client Company Claim** is made has a **Client Service Agreement** or is identified in a Related Entity Addendum to the Client Services Agreement in effect with the **Named Insured** when the **PEO Client Company Claim** is made; and

d. The **Insured Event** out of which the **PEO Client Company Claim** arises first happens or commences: 1) after the inception date of the **Client Services Agreement** and prior to its termination, 2) after the inception date of the first employment practices liability policy issued to the **Named Insured** (8/1/97), and 3) prior to the expiration date of the policy.

e. The **PEO Client Company** shall report a **Claim** in accordance with Section IV. **Reporting and Notice.**

f. The **PEO Client Company** has paid, or caused to be paid, all **Loss Amounts** within the Self-Insured Retention. If the **PEO Client Company** fails to pay all or any portion of **Loss Amounts** within the Self-Insured Retention for any reason, **we** will have no obligations under the policy to provide the coverage outlined in paragraph II.A.1. above or under any other coverage to which the Self-Insured Retention applies.

3. A **Claim** shall be considered to be made on the earlier of:

1. the date any **Insured** receives a written notice of a **Claim** being made against any **Insured** seeking damages covered by this policy; or

2. the date **we** make a settlement on account of an **Insured Event** but in advance of written **Claim** being made.

4. All **Claims** arising out of the same **Insured Event** and all **Insured Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes, shall be deemed one **Claim**, and all such **Claims** shall be deemed to be first made when the earliest of such **Claims** is first made, whether before or during the **Policy Period**. Only the policy in effect at the time such **Claim** is first made shall apply to such **Claim**.

5. **We** have the right to investigate and settle up to the applicable Limits of Insurance any **Claim** in the manner and to the extent **we**, in **our** sole discretion, deem proper subject to the provisions outlined in Section II. B. 2 d., provided the **Named Insured** is notified of such settlement. Upon receipt by **us** of notice of circumstances which are likely to give rise to a **Claim**, **we** also have the right (but not the duty) to investigate and make such a settlement even before a **Claim** is made.

B. **DEFENSE**

**1-**  We have the right and duty to defend any **Claim** because of an **Insured Event** to which this insurance applies made or brought against any **Insured(s)**. **We** shall have the right and duty to assign defense counsel.

    a.  The Insurer's obligation to pay **Defense Costs** to such counsel is expressly conditioned on the following:

        (1) Insurer shall pay such counsel at pre-approved rates; and

        (2) Such counsel shall in all respects adhere to any Litigation Management Guidelines or Billing and Reporting Guidelines issued by the Insurer, which may be updated from time to time.

    b.  The **Insurer** has the right and duty to defend any **Claim** against any **Insured** covered under this Policy, even if such **Claim** is false, fraudulent or groundless.

        (1) The law firm of Jackson Lewis LLP will be the pre-designated defense counsel for **Claims** covered under this policy and for which the **Named Insured** offers a Legal Defense Benefit as set forth in the Client Services Agreement in effect between the **Named Insured** and a **PEO Client Company**, or in which the **Named Insured** is a named party. The **Named Insured** may change the pre-designated defense counsel for **Claims** covered under this policy and for which the **Named Insured** offers Legal Defense Benefit at its discretion with notice to **us.**

        (2) For any other **Claim** covered under this policy and for which no Legal Defense Benefit is offered to any **Insured**, we shall select and assign defense counsel other than Jackson Lewis.

        (3) However, for any **Claim**, if an **Insured** refuses to accept, or refuses to cooperate in the assignment of, defense counsel assigned by the **Insurer** in accordance with the provisions of this policy, the **Insurer** shall have no duty to defend that **Claim**, will not pay any **Loss** arising from same, including but not limited to **Defense Costs**, and will not apply any amounts incurred by the **Insured** to the applicable Retention obligation for that **Claim**. Provided, however, that if the **Insured's** refusal to accept **Insurer** assigned counsel is justified by and in accordance with applicable state law governing a right to independent counsel or is justified by applicable rules regarding conflicts of interest, the **Insurer's** duties will not be affected by such refusal and will remain.

        (4) Even if the **Insurer** has no duty to defend or indemnify pursuant to Subsection II.B.1.b.(3). for a particular **Insured**, the **Insurer** shall have the right and shall be given the opportunity to make any investigation it deems necessary.

    2.

        a.  **Our** duty to defend any **PEO Client Company Claim** ends when the  Limits of Insurance applicable to that **Insured Event** (Item 3. II., Each **PEO Client Company** Sub-limit of the Declarations) have been exhausted.

b. If the **Policy Period** Limit (Item 3. II. of the Declarations) is exhausted, **we** will notify the **Named Insured** of all outstanding **Claims** so that the **Insured** can assume control of the defense of all such **Claims**.

c. In the event of exhaustion of the total **Policy Period** Limit (Item 3. II. of the Declarations,) so that a transfer of the control of the defense from **us** to **you** becomes appropriate, **we** agree to continue the defense of the **Claim(s)** during that reasonable period of time necessary for **you** to assume control of the defense. However, **you** agree that, by so doing, **we** do not waive or surrender any of **our** rights including the right to withdraw from the defense of such **Claim(s)**. **You** also agree to promptly reimburse **us** for the expenses **we** incur in continuing to conduct the defense during the transition period from the time the applicable Limits of Insurance were

d. In the event that a claimant offers a settlement and **we** recommend that such settlement be accepted, but the **Insured** withholds consent to so settle and the **Claim** later results in a judgment or settlement in excess of the amount of the earlier settlement offer, then the **Insured** shall be subject to a 5 0% coinsurance obligation with respect to all **Loss Amounts** for any subsequent settlement and/or judgment in excess of the greater of 1) the applicable Self- Insured Retentions for settlements/judgments and **Defense Costs**, or 2) the amount of such settlement offer and **Defense Costs** incurred to that time. The **Loss Amounts we** will pay is limited as described in item 3 of the Declarations.

e. The **Defense Costs** are not in addition to but rather are included within and subject to the Limits of Insurance.

f. **Our** duties under this policy, including but not limited to the duty to defend, are contingent upon the **PEO Client Company** paying, or causing to be paid, **Defense Costs** within the Self-Insured Retention as required in the Section of this Policy dealing with **Self-Insured Retention**. If for any reason the **PEO Client Company** fails to pay all or any portion of **Defense Costs** within the Self-Insured Retention, **we** will have no further or continuing duty to defend under this policy, we will have no obligation to pay any other **Loss Amounts** under this policy, and **we** will have the right to withdraw from any defense earlier provided.

C. **OTHER BENEFITS**

1. **Pre-judgment Interest**

   **We** shall pay the amount of pre-judgment interest imposed on a verdict. However, **our** obligation to pay pre-judgment interest shall not be in addition to the applicable Limits of Insurance but rather shall be within and subject to said Limits of Insurance.

2. **Post-judgment Interest**

   **We** shall pay the entire amount of post-judgment interest calculated upon the amount for which **we** are liable under this policy until such time as **we** have paid or tendered such amount. However, **our** obligation to pay post-judgment interest shall not be in addition to the applicable Limits of Insurance but rather shall be within and subject to said Limits of Insurance.

III. <u>**WHO IS AN INSURED**</u>

A. **Worksite Employees. Worksite Employees** are **Insureds** but only for the conduct

of business within the scope of their employment. **Worksite Employee** also  includes a Self Employed Individual or a Non-Paid Owner who has signed the **Named Insured's** "Self-Employed Individual and Non-Paid Owner  Participation Addendum" to the **Client Services Agreement**.  The **Worksite  Employees'** status as **Insureds** will be determined as of the date of the alleged **Discrimination**, **Sexual Harassment**, **Wrongful Termination**, or **Workplace Torts**.

B. **Spouses, Estates, Heirs, Legal Representatives and Domestic Partners.**  The lawful spouse (whether by statutory or common law), estate, heirs,  legal representatives or person recognized by law or the **Corporation** as a  domestic partner of an **Insured** are **Insureds** when they suffer loss arising from  employment related **Wrongful Termination, Discrimination,** and **Sexual Harassment  Claim(s)** otherwise covered by this policy that arise solely out of their status as the spouse, estate, heir or legal representative of an **Insured.** This includes **Claims** that  seek damages recoverable from marital community property and property jointly held   by an **Insured** or the spouse. The lawful  spouse (whether by  statutory  or common law), estate, heirs and legal representatives of an **Insured** are not **Insureds** when  the **Claim** at issue arises from any actual or alleged wrongful act of the lawful spouse, estate, heirs and legal representative of an **Insured.**

C. **PEO Client Company** and all entities that are identified in a Related Entity Addendum to the Client Services Agreement are **Insureds** but solely for **PEO Client  Company Claim(s).**

IV.   **<u>REPORTING and NOTICE</u>**

It shall be a condition precedent to **our** obligations under this policy that the  Insureds comply with all of the following conditions.
**DUTIES IN THE EVENT OF AN INCIDENT, CLAIM OR SUIT**

1. **Notice of incident** – The **PEO  Client Company** shall  give  the  **Named Insured's** Legal Department or Human Resources Business Partner  assigned  to the **PEO  Client Company** written notice, via facsimile, electronic mail,  or overnight mail, as soon as practicable after an **Insured** becomes aware of any incident which is likely to give rise to a **Claim** covered by this  policy.  Such notice shall include as much detail as possible and shall include, to the extent possible:

   a.   the identity of the person(s) alleging **Discrimination**, **Wrongful Termination**, **Sexual Harassment** or **Workplace Torts**;

   b. the identities of the **Insured(s)** who allegedly committed  the **Discrimination**, **Wrongful Termination**, **Sexual Harassment** or  **Workplace Torts** and any witnesses;

   c.   the date the alleged incident took place.

   Notice of  such  an  incident  likely  to  give  rise  to  a  **Claim** nevertheless does

U-ADP-101-A NJ (07/21)
ADP PEO Manuscript Policy – Coverage Part B
Page 5 of 14

EXHIBIT A, Page 31

not constitute a **Claim** being made.

2. If a **Claim** is made or suit is brought against any **Insured**, the **PEO Client Company** must:

   a. immediately record the specifics of the **Claim** and the date received; and

   b. notify the **Named Insured's** Legal Department or Human Resources Business Partner assigned to the **PEO Client Company** in writing, via facsimile, electronic mail or overnight mail, as soon as practicable within the **Policy Period**; but no later than 30 days after the expiration date of the **Policy Period**; and prior to the termination of the **Client Services Agreement**

   c. immediately send the **Named Insured's** Legal Department or Human Resources Business Partner assigned to the **PEO Client Company** copies of any demands, notices, summonses or legal papers received in connection with the **Claim**;

   d. authorize **us** to obtain records and other information;

   e. cooperate with **us** in the investigation, settlement or defense of the **Claim**; and

   f. assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to any **Insured** because of injury or damage to which this insurance may also apply.

V.  **EXCLUSIONS**

   A. **Workers' Compensation.** This policy does not cover any obligation under a workers' compensation, disability benefits or unemployment compensation law, or any similar law. This exclusion shall not apply to a **Claim** brought by a **Worksite Employee(s)** alleging **Wrongful Termination** or retaliation of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such statute, law, rule or regulation.

   B. **Contractual Liability**. This policy does not cover any **Loss Amounts** which the **Insured** is obligated to pay by reason of the assumption of another's liability for an **Insured Event** in a contract or agreement, provided, this exclusion shall not apply to a **PEO Client Company Claim.**

   C. **Employee Retirement Income Security Act.** This policy does not cover any liability imposed on the **Insured** under the Employee Retirement Income Security Act of 1974, Public Law 93-406, or any amendments thereto ("ERISA"). Notwithstanding the preceding statement, a **Claim** made by an **Employee(s)** against the **Insured** alleging **Wrongful Termination, Discrimination** or **Workplace Torts** (including retaliation in violation of Section 510 of ERISA) shall be covered. However, **we** will not pay as **Loss Amounts** the benefits, pensions, insurance or other rights sought by an **Employee(s)** under any ERISA benefit plan unless the loss is caused by an

**Insured Event**

D.  **Strikes and Lockouts.** This policy does not cover any **Loss Amount(s)** or costs arising out of or associated with a lockout, strike, picket line, replacement  or other similar actions in connection with labor disputes or labor negotiations.  This exclusion shall not apply to a **Claim** brought by an **Employee(s)** alleging **Wrongful Termination** or retaliation as a result of strike activity or union involvement.

E.  **W.A.R.N. Act.** This policy does not cover any liability arising out of the  Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), or any amendment thereto, or any similar federal, state  or  local  law.  This  exclusion shall not apply to a **Claim** brought  by  an **Employee(s)** alleging **Wrongful Termination** or retaliation of the claimant by the **Insured** on account  of  the  claimant's  exercise of rights pursuant to any such statute, law, rule or  regulation.

F.  This policy does not  apply with respect to  liability or costs  incurred by any **Insured** to modify any building or property in order to make said building or property  more accessible or accommodating to any disabled person.

G.  This policy does not  cover any liability alleged to  be owing under,  or arising out of, or related to an express contract of employment or an express obligation to  make payments.

H.  **Wage & Hour Violations.** This policy does not cover any **Loss Amounts** or  costs arising out of or associated with any alleged violation of the obligations or duties pursuant to the Fair  Labor Standards  Act (except  the  Equal Pay  Act) and  any other law  concerning wage and hour practices, including, but not  limited to  any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or  non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair  business  practices.  This exclusion shall not apply to any **Claim** for any actual or  alleged retaliatory treatment of the claimant by the **Insureds** on account of the  claimant's exercise of rights pursuant to any such law.

I.  This policy does not cover **Loss Amounts** that a **PEO Client Company** is  legally obligated to pay because of termination of a **Client Services Agreement.**

J.  **Business Disputes.**  This policy does not cover Loss Amounts arising from,  relating to or in any way involving a dispute among current, former or alleged owners, shareholders, members, partners, joint-ventures, investors in or holders of any  other form of equity or ownership interest in a business entity, venture or enterprise, including agents, heirs, executors, administrators, predecessors, successors, assigns, representatives and attorneys of such parties, in any way involving  the alleged rights and/or responsibilities associated with such ownership or business interests ("Business Disputes"), or to Insured Events arising from, directly or indirectly, or relating to in any way in whole or in part from such Business Disputes.

K. **Breach of CSA.** Any **PEO Client Company**'s misrepresentation to the **Named Insured** in its application process for a **Client Services Agreement** shall be deemed a breach of the **Client Services Agreement**, and there shall be no coverage for the **PEO Client Company** and all entities named in a Related Party Addendum to the Client Services Agreement for any **Claim** involving any person, fact, circumstance, transaction, cause, or event that is the subject of the misrepresentation.

L. **Prior Knowledge.** This policy does not cover any **Loss Amounts** based upon, arising out of or attributable to any **Insured Event** which could reasonably have been expected to result in a **Claim**, if on or before the inception date of the **Client Services Agreement**, the **PEO Client Company's** management or Supervisory Employee(s), as defined in Section VII., or the PEO Client Company's corporate legal or human resource departments, knew of such **Insured Event**.

M. **Biometric Information Claim.** This policy does not cover any **Loss Amount** or **Defense Costs** based upon, arising out of or attributable to any **Biometric Information Claim**.

VI. **LIMITS OF INSURANCE**

A. The Amount shown in the Declarations as Each **PEO Client Company** Sublimit is the most **we** will pay on behalf of each **PEO Client Company** and all entities that are identified in a Related Entity Addendum to the Client Services Agreement for all **PEO Client Company Claims,** regardless of the number of claimants or **Insureds** against whom such **PEO Client Company Claim(s)** are made during each **Policy Period**. The Each **PEO Client Company Sublimit** is contained within and limited by the Total **Policy Period** Limit and is not in addition to the Total **Policy Period** Limit. **The** Each **PEO Client Company Sublimit** applies on an annual basis.

B. **Total Policy Period Limit.**
Subject to the Each **PEO CLIENT Company** Sub-limit, the amount shown as the Total **Policy Period** Limit in Item 3. II. of the Declarations is the most **we** will pay under this policy for all **Claims** made or brought during the **Policy Period**.

VII. **DEFINITIONS**

A. **Claim** means a **PEO Client Company Claim**

B. **Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement, defense of a specific **Claim**, including attorney fees and expenses, the cost of legal, administrative, or alternative dispute resolution proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the Limit of Insurance that applies(**we** have no obligation to furnish such bonds), all reasonable expenses that any **Insured** incurs at **our** request while helping **us** investigate or defend a **Claim** and, subject to Section II, C of this policy, all costs taxed against any **Insured** in a suit.

Salaries and expenses of any **Insured's** employees or **Worksite Employee(s)** shall

not be deemed to be covered **Defense Costs** except that the Self-Insured Retention will be reduced by $5,000 for the in-house preparation by the **Named Insured,** or by any law firm assigned by the **Named Insured,** of a response to any governmental agency involving a **Claim** regarding an **Insured Event** (e.g., Equal Employment Opportunity Commission position statement). This $5,000 reduction applies for each **Claim** involving an **Insured Event**.

**Defense Costs** are included within, and are not in addition to, the applicable Limits of Insurance

C.  **Discrimination** means termination of an employment relationship or a demotion or a failure or refusal to hire or promote or otherwise to take any action against any individual with respect to his or her compensation, terms, conditions, privileges or opportunities of employment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation or other protected category or characteristic established pursuant to any applicable United States federal, state, or local statute or ordinance.

D.  **Insured Event** means (1) **your Worksite Employee** or former **Worksite Employee**, or an applicant for employment with **you**, alleging **Discrimination** by an **Insured**, or (2) **your Worksite Employee** or former **Worksite Employee** alleging **Sexual Harassment** by an **Insured**, or (3) **your** former **Worksite Employee** alleging **Wrongful Termination** by an **Insured,** or (4) **your Worksite Employee** or former **Worksite Employee** or an applicant for employment with **you** alleging **Workplace Torts** by an **Insured.** Alleging means lodging an oral or written complaint or charge with **your** management or **Supervisory Employee(s)** or with **your** corporate legal or human resource departments. **Supervisory**

**Employee** means an officer or director of a **PEO Client Company,** the **Named Insured** or any **Employee** of an **Insured** who has authority to supervise the performance of other **Employees** of an **Insured**.

E.  **Loss Amount** means all forms of compensatory damages, monetary damages, statutory damages, multiplied damages, punitive or exemplary damages, judgments, settlements, statutory attorney fees, and **Defense Costs** arising out of **Claim(s)** alleging **Discrimination, Sexual Harassment, Wrongful Termination, or Workplace Torts.**

It is agreed that the law of the jurisdiction most favorable to the insurability of punitive or exemplary damages shall control for the purpose of resolving any issue or dispute regarding whether these damages are insurable under this policy; provided however that **Loss Amount** shall not include amounts deemed uninsurable under the law in the jurisdiction most favorable to the **Insured**.

**Loss Amount** shall not include taxes, criminal fines or penalties.

**Loss Amount** also shall not include payment of insurance plan benefits claimed by or on behalf of any retired **Worksite Employee**, or that a claimant would have been entitled to as a **Worksite Employee** had the **Insured** provided the claimant with a continuation of insurance.

**Loss Amount** also shall not include amounts awarded pursuant to a  labor  or grievance arbitration pursuant to a collective bargaining agreement.

**Loss Amount** shall not include compensation earned by the claimant in the course  of employment but not  paid by the **Named Insured** or the **PEO Client Company**  and all entities that are identified in a Related Entity Addendum to the Client Services Agreement including but not limited to unpaid salary, overtime, bonus  and  wages. **Loss Amount** also  shall  not  include  vested  and  non-vested  stock  options,  retirement  benefits, severance pay, prerequisites, fringe benefits, vacation days or  sick days.

**Loss Amount(s)** do not cover those amounts arising from an express or  written employment agreement.

F.  **Policy Period** means the period of time commencing with the Inception Date  shown in Item 2 of the Declarations and the earlier of the termination date shown in Item 2 of the Declarations or the date on which this policy is terminated by cancellation by **you** or by **us**.

G.  **Sexual Harassment** means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that: (1) are made  a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance or creates an intimidating, hostile, or offensive work environment.

H.  **Workplace Torts** including without limitation retaliation, defamation, infliction of emotional distress, invasion of privacy, wrongful discipline, wrongful  reference, failure to grant tenure, employment related misrepresentation, wrongful failure to promote, wrongful deprivation of career opportunity or wrongful demotion,  or negligent hiring, negligent retention, negligent evaluation, negligent supervision, negligent training, workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or  communications by any **Insured**.

I.  **Wrongful Termination** means  termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment. Wrongful Termination shall include  but  shall  not  be limited  to  breach of  an  implied employment contract, retaliation, or the filing  of a Claim under federal, state, local or foreign "whistleblower" laws.

J.  **PEO Client Company** means an entity that has entered into a **Client  Services Agreement** with the **Named Insured**, thus becoming a client of the **Named  Insured** and the worksite employer of the **Worksite  Employee(s)**.

K.  **PEO Client Company Claim** means a written demand or notice received by an **Insured** alleging an **Insured Event** in which damages likely to be covered by  this policy are alleged. **Claim** includes a civil action, an administrative proceeding, alternative dispute resolution proceeding, or an action brought by a person or entity acting on  behalf of a

**Worksite Employee(s)**, or applicant(s) for employment as a **Worksite Employee(s)** or former **Worksite Employee(s)** to which **you** must submit or to which **you** submit with **our** consent. **Claim** shall include a proceeding for injunctive or non-monetary relief. **Claim** shall not include labor or grievance arbitration subject to a collective bargaining agreement. A class action lawsuit is considered one **Claim**.

L. **Worksite Employee** means a person co-employed by the **Named Insured** and a **PEO Client Company** and covered by a **Client Services Agreement**, engaged to perform services on behalf of the **PEO Client Company's** business. **Worksite Employee** also includes a Self Employed Individual or a Non-Paid Owner who has signed the **Named Insured's** "Self-Employed Individual and Non-Paid Owner Participation Addendum" to the **Client Services Agreement**.

M. **Client Services Agreement** means a contractual agreement between the **Named Insured** and a **PEO Client Company** which defines the responsibilities of the **Named Insured** and a **PEO Client Company** with respect to the **Named Insured's** provision of professional employer organization (PEO) services to a **PEO Client Company**. Pursuant to the **Client Services Agreement**, the **PEO Client Company** is primarily responsible for supervision over the work product, and the **Named Insured** assumes certain employer and administrative responsibilities with respect to payroll, benefits, and other human resource functions on an ongoing basis.

N. **Biometric Information** means any information used to identify a natural person based on an anatomical scan or any record of biological pattern or characteristic, including but not limited to such natural person's retina or iris scan, fingerprint, voiceprint, or any record of hand or face geometry. **Biometric Information** shall not include any information that is protected or regulated pursuant to the Health Insurance Portability and Accountability Act of 1996.

**Biometric Information Claim** means a **Claim** brought or maintained against an **Insured** based upon, arising out of or attributable to a violation of any federal, state or local law that regulates or restricts the storage, collection or use of **Biometric Information**.

VIII.   **SELF-INSURED RETENTION**

A. **Our** obligation under the coverage provided by this policy to pay **Loss Amounts** on behalf of any **Insured** shall apply only to **Loss Amounts** in excess of the Self-Insured Retention as stated in B. below and subject to Section VI., LIMITS OF INSURANCE in this Coverage Part B – Client Companies. The terms of this policy with respect to **our** rights and duties relative to investigation, settlement and duty to defend apply in excess of the application of the **Insured's** Self-Insured Retention, subject to the provisions outlined in Section II.B.

B. The Self-Insured Retention amount is as follows: $25,000 per **Claim** for settlement or judgments and $75,000 per **Claim** for **Defense Costs**. In the event that a **Claim** is brought against multiple **Insureds** arising out of the same **Insured Event**, the Self-Insured Retention will apply as if there was a single **Claim**. In the event a **Claim**(s) brought by multiple claimant(s) arises out of the same facts and circumstances, the Self-Insured Retention will apply as if there was a single **Claim.** In the event that a single

**Claim** arising out of the same **Insured Event** is afforded coverage under this Coverage Part and Coverage Part A, the Self-Insured Retention under this Coverage Part shall apply.

IX.   **CONDITIONS**

A.  **OTHER INSURANCE**

1.  **Primary Insurance**-Unless expressly written to be excess over other applicable insurance, it is intended that this insurance be primary with respect to **Wrongful Termination, Discrimination, Sexual Harassment** and **Workplace Torts**.

2.  **Excess Insurance** – When this insurance is specifically written to be excess of other insurance, **we** will have no duty to defend any **Claim** that any other insurer has a duty to defend until such time as the underlying insurance is exhausted by payment of **Loss Amounts** that would, in the absence of such insurance be recoverable under this policy. When this policy is excess:

    a.  This policy will not follow form to any underlying insurance and only the terms and conditions of this policy shall apply to any **Claim** in the determination of coverage and **Loss Amounts** to be paid, if any;

    b.  **We** will pay only **Loss Amounts**, in excess of and after exhaustion of the underlying insurance limits, and any deductible or self-insured retention in connection with the underlying insurance; and

    c.  This policy is intended to be excess of any valid and collectible insurance obtained directly by the **PEO Client Company** ("Client Company Primary Policy"). The deductible or self-insured retention applicable to the **Claim** pursuant to this policy shall be reduced by any applicable deductible or self-insured retention paid for the **Claim** by the **PEO Client Company**, or by payment on said **Claim** made under the Client Company Primary Policy.

B.  **VOLUNTARY PAYMENTS**

No **Insured** shall, except at the **Insureds'** sole cost, make any payment, assume any obligation or incur any expense without **our** consent.

C.  **REPRESENTATIONS**

By accepting this policy, **you** agree that:

1.  the statements in the Application and Declarations and to the **Named Insured** in the Request for Proposal regarding the **PEO Client Company's** knowledge of any incidents, facts or circumstances which may result in a **Claim** are accurate and complete.

2. those statements are based upon representations **you** made to **us**;

3. **we** have issued this policy in reliance upon **your** representations; and

4. the representations made are binding on all **Insureds**.

D. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any **Insured** has rights to recover all or part of any payment **we** have made under this policy, those rights are transferred to **us**. The **Insured** must do nothing after an **Insured Event** or a **Claim** to impair them. At **our** request, the **Insured** will transfer those rights to **us** and help **us** enforce them.

E. **BANKRUPTCY**

The bankruptcy, insolvency or inability to pay of an **Insured** or of an **Insured's** estate will not relieve **us** of **our** obligations under this policy. However, neither shall such bankruptcy, insolvency or inability to pay increase **our** liability with respect to the Self-Insured Retention, nor in any other way.

F. **CANCELLATION**

1. The **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

2. we may not cancel this policy except for nonpayment of premium

3. If **we** cancel this policy for nonpayment of premium, **we** will mail or deliver to the Vice President of Risk Management of the **Named Insured** at 10200 SW 72nd Dr., Miami, FL33173 or its last mailing address known to us written notice of cancellation at least 10 days before the effective time of cancellation.

4. Notice of cancellation will state the effective time of cancellation. The **Policy Period** will end at that time.

5. If this policy is cancelled, **we** will send the **Named Insured** any premium refund due in due course. If **we** cancel, the refund will be pro rata. If the **Named Insured** cancels, the refund will be on the customary short rate basis. The return or tender of a return premium shall not be a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

6. If notice is mailed, receipt by the Vice President of Risk Management of the **Named Insured** at 10200 SW 72nd Dr., Miami, FL 33173 or its last known address will be sufficient proof of notice

7. If any law controlling requires a longer period of notice by **us**, **we** will give the

longer notice.

G.  **CHANGES**

This policy contains all the agreements between **you** and **us** concerning the insurance afforded. The **Named Insured** shown in the Declarations is authorized by all other **Insureds** to negotiate changes in the terms of this policy with **us** and to receive and give all notices under this policy. This policy's terms can be amended or waived only by endorsement issued by **us** and made part of the policy.

H.  **PREMIUMS**

The **Named Insured** shown in the Declarations:

1.  is responsible for the payment of all premiums; and

2.  will be the payee for any return premiums **we** pay.

I.  **LEGAL ACTION AGAINST US**

1.  No person or organization has a right under this policy:

    a.  to join **us** as a party or otherwise bring **us** into a suit asking for damages from any **Insured**; or
    b.  to sue **us** on this policy unless all of its terms have been fully complied with.

2.  A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against the **Insured** obtained after an actual trial, but **we** will not be liable for any **Loss Amount** that is not payable under the terms of this policy or that is in excess of the applicable Limits of Insurance. An agreed settlement means a settlement and release of liability signed by **us**, the **Insured** and the claimant or the claimant's legal representative.

J.  **SERVICE OF SUIT**

It is agreed that in the event of **our** failure to pay any amount claimed to be due hereunder, **we**, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process may be made upon General Counsel, Law Department, Zurich American Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against **us** upon this policy, **we** will abide by the final decision of such court or of an appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, **we** hereby designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as **our** true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of **you** or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the General Counsel, Law Department, Zurich American Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

K.    **CHOICE OF VENUE; CHOICE OF LAW**

This policy shall be construed in accordance with and governed by the laws of the State of California, without regard to conflict of law principles of any state. The parties agree that the Superior Court of California, County of Los Angeles – Central District is an appropriate venue for any legal proceedings concerning disputes over the construction or application of the policy.

U-ADP-101-A NJ (07/21)
ADP PEO Manuscript Policy – Coverage Part B
Page 15 of 14



**EPL PEO SELECT**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**CLAIMS-MADE**
**CLIENT COMPANY**
**COVERAGE PART C**

## I.  PREAMBLE

**THIS IS A CLAIMS-MADE POLICY IN WHICH COSTS OF DEFENSE ARE INCLUDED WITHIN AND SUBJECT TO THE LIMITS OF INSURANCE. READ THIS POLICY CAREFULLY.**

Throughout this policy, unless the context otherwise requires, the words **you** and **your** refer to the **Named Insured** as identified in the Declarations and any other person qualifying as an **Insured** under Section III of this policy (**WHO IS AN INSURED**). The words **we**, **us** and **our** refer to Zurich American Insurance Company.

Words appearing in boldface type in this policy shall have the meaning as defined in the **DEFINITIONS** section or elsewhere in this policy.

This policy covers employment related **Wrongful Termination**, **Discrimination, Sexual Harassment** and **Workplace Torts** liability, all subject to the terms, definitions, conditions, limitations, exclusions and other provisions set forth in this policy.

This policy has been issued by **us** in reliance upon the statements made to **us** by **you** or **your** authorized representative in **your** application for this policy, which application is attached to and forms a part of this policy.

## II.  INSURING AGREEMENT

### A.  INDEMNITY

1. Subject to all of the terms, limitations, conditions, definitions, exclusions and other provisions of this policy, **we** will pay all **Loss Amounts** that the **Insured** is legally obligated to pay because of an **Insured Event** to which this insurance applies. The amount **we** will pay is limited as described in Item 3 of the Declarations and in the Sections of this policy dealing with **LIMITS OF INSURANCE, DEFENSE, SELF-INSURED RETENTION** and **OTHER INSURANCE**.

2. Subject to the other provisions of this policy, it is agreed that coverage only applies to **Claims** first made against any **Insured** during the **Policy Period**. Coverage is provided for a **PEO Client Company Claim** only if:

   a. The claimant is a **Worksite Employee**, or an applicant for employment, of the **Named Insured** and **PEO Client Company** or a former **Worksite Employee** of the **Named Insured** and **PEO Client Company;** and the **Claim** is brought by or on behalf of said **Worksite Employee** or applicant for employment, and

   b. The **Named Insured, PEO Client Company** or other Insured identified in Section III are named in the **PEO Client Company Claim** and the **PEO**

**Client Company Claim** alleges **Discrimination**, **Sexual Harassment, Wrongful Termination** or **Workplace Torts** against the **Named Insured,** the **PEO Client Company** or other Insured identified in Section III; and

c.   The Insured identified in Section III against whom the **PEO Client Company Claim** is made has a **Client Service Agreement** or is identified in a Related Entity Addendum to the Client Services Agreement in effect with the **Named Insured** when the **PEO Client Company Claim** is made; and

d.   The **Insured Event** out of which the **PEO Client Company Claim** arises first happens or commences: 1) after the inception date of the **Client Services Agreement** and prior to its termination, 2) after the inception date of the first employment practices liability policy issued to the **Named Insured** (8/1/97), and 3) prior to the expiration date of the policy.

e.   The **PEO Client Company** shall report a **Claim** in accordance with Section IV. **Reporting and Notice.**

f.   The **PEO Client Company** has paid, or caused to be paid, all **Loss Amounts** within the Self-Insured Retention. If the **PEO Client Company** fails to pay all or any portion of **Loss Amounts** within the Self-Insured Retention for any reason, **we** will have no obligations under the policy to provide the coverage outlined in paragraph II.A.1. above or under any other coverage to which the Self-Insured Retention applies.

3.   A **Claim** shall be considered to be made on the earlier of:

1)   the date any **Insured** receives a written notice of a **Claim** being made against any **Insured** seeking damages covered by this policy; or

2)   the date **we** make a settlement on account of an **Insured Event** but in advance of written **Claim** being made.

4.   All **Claims** arising out of the same **Insured Event** and all **Insured Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes, shall be deemed one **Claim**, and all such **Claims** shall be deemed to be first made when the earliest of such **Claims** is first made, whether before or during the **Policy Period**. Only the policy in effect at the time such **Claim** is first made shall apply to such **Claim**.

5.   **We** have the right to investigate and settle up to the applicable Limits of Insurance any **Claim** in the manner and to the extent **we**, in **our** sole discretion, deem proper subject to the provisions outlined in Section II. B. 2 d., provided the **Named Insured** is notified of such settlement. Upon receipt by **us** of notice of circumstances which are likely to give rise to a **Claim**, **we** also have the right (but not the duty) to investigate and make such a settlement even before a **Claim** is made.

**B. DEFENSE**

1-   We have the right and duty to defend any **Claim** because of an **Insured Event** to

which this insurance applies made or brought against any **Insured(s)**. **We** shall have the right and duty to assign defense counsel.

a.   The Insurer's obligation to pay **Defense Costs** to such counsel is expressly conditioned on the following:

(1)  Insurer shall pay such counsel at pre-approved rates; and

(2)  Such counsel shall in all respects adhere to any Litigation Management Guidelines or Billing and Reporting Guidelines issued by the Insurer, which may be updated from time to time.

b.   The **Insurer** has the right and duty to defend any **Claim** against any **Insured** covered under this Policy, even if such **Claim** is false, fraudulent or groundless.

(1)  The law firm of Jackson Lewis LLP will be the pre-designated defense counsel for **Claims** covered under this policy and for which the **Named Insured** offers a Legal Defense Benefit as set forth in the Client Services Agreement in effect between the **Named Insured** and a **PEO Client Company**, or in which the **Named Insured** is a named party. The **Named Insured** may change the pre- designated defense counsel for **Claims** covered under this policy and for which the **Named Insured** offers Legal Defense Benefit at its discretion with notice to us.

(2)  For any other **Claim** covered under this policy and for which no Legal Defense Benefit is offered to any **Insured**, we shall select and assign defense counsel other than Jackson Lewis.

(3)  However, for any **Claim**, if an **Insured** refuses to accept, or refuses to cooperate in the assignment of, defense counsel assigned by the **Insurer** in accordance with the provisions of this policy, the **Insurer** shall have no duty to defend that **Claim**, will not pay any **Loss** arising from same, including but not limited to **Defense Costs**, and will not apply any amounts incurred by the **Insured** to the applicable Retention obligation for that **Claim**. Provided, however, that if the **Insured's** refusal to accept **Insurer** assigned counsel is justified by and in accordance with applicable state law governing a right to independent counsel or is justified by applicable rules regarding conflicts of interest, the **Insurer's** duties will not be affected by such refusal and will remain.

(4)  Even if the **Insurer** has no duty to defend or indemnify pursuant to Subsection

II.   B.1.b.(3). for a particular **Insured**, the **Insurer** shall have the right and shall be given the opportunity to make any investigation it deems necessary.

**2.**

    **a.**   **Our** duty to defend any PEO Client Company **Claim** ends when the Limits of Insurance applicable to that **Insured Event** (Item 3. III. Each **PEO Client Company** Sub-Limit of the Declarations) have been exhausted.

    **b.**   If the **Policy Period** Limit (Item 3. III. of the Declarations) is exhausted, **we** will notify the **Named Insured** of all outstanding **Claims** so that the **Insured** can assume control of the defense of all such **Claims**

    **c.**   In the event of exhaustion of t he total **Policy Period** Limit (Item 3. III. of the Declarations,) so that a transfer of the control of the defense from **us** to **you** becomes appropriate, **we** agree to continue the defense of the **Claim(s)** during that reasonable period of time necessary for **you** to assume control of the defense. However, **you** agree that, by so doing, **we** do not waive or surrender any of **our** rights including the right to withdraw from the defense of such **Claim(s)**. **You** also agree to promptly reimburse **us** for the expenses **we** incur in continuing to conduct the defense during the transition period from the time the applicable Limits of Insurance

d.  In the event that a claimant offers a settlement and **we** recommend that such settlement be accepted, but the **Insured** withholds consent to so settle and the **Claim** later results in a judgment or settlement in excess of the amount of the earlier settlement offer, then the **Insured** shall be subject to a 5 0% coinsurance obligation with respect to all **Loss Amounts** for any subsequent settlement and/or judgment in excess of the greater of 1) the applicable Self-Insured Retentions for settlements/judgments and **Defense Costs**, or 2)the amount of such settlement offer and **Defense Costs** incurred to that time. The **Loss Amounts we** will pay is limited as described in item 3 of the Declarations.

e.  The **Defense Costs** are not in addition to but rather are included within and subject to the Limits of Insurance.

f.  **Our** duties under this policy, including but not limited to the duty to defend, are contingent upon the **PEO Client Company** paying, or causing to be paid, **Defense Costs** within the Self-Insured Retention as required in the Section of this Policy dealing with **Self-Insured Retention**. If for any reason the **PEO Client Company** fails to pay all or any portion of **Defense Costs** within the Self-Insured Retention, **we** will have no further or continuing duty to defend under this policy, we will have no obligation to pay any other **Loss Amounts** under this policy, and **we** will have the right to withdraw from any defense earlier provided.

## C.  OTHER BENEFITS

### 1.  Pre-judgment Interest

**We** shall pay the amount of pre-judgment interest imposed on a verdict. However, **our** obligation to pay pre-judgment interest shall not be in addition to the applicable Limits of Insurance but rather shall be within and subject to said Limits of Insurance.

### 2.  Post-judgment Interest

**We** shall pay the entire amount of post-judgment interest calculated upon the amount for which **we** are liable under this policy until such time as **we** have paid or tendered such amount. However, **our** obligation to pay post-judgment interest shall not be in addition to the applicable Limits of Insurance but rather shall be within and subject to said Limits of Insurance.

## III.   WHO IS AN INSURED

A.  **Worksite Employees. Worksite Employees** are **Insureds** but only for the conduct of business within the scope of their employment. **Worksite Employee** also includes a Self Employed Individual or a Non-Paid Owner who has signed the **Named Insured's** "Self-Employed Individual and Non-Paid Owner Participation Addendum" to the **Client Services Agreement**. The **Worksite Employees'** status as **Insureds** will be determined as of the date of the alleged **Discrimination**, **Sexual Harassment**, **Wrongful Termination**, or **Workplace Torts**.

B.  **Spouses, Estates, Heirs, Legal Representatives and Domestic Partners.** The lawful spouse (whether by statutory or common law), estate, heirs, legal representatives or person recognized by law or the **Corporation** as a domestic partner of an **Insured** are **Insureds** when they suffer loss arising from employment related **Wrongful Termination, Discrimination,** and **Sexual Harassment Claim(s)** otherwise covered by this policy that arise solely out of their status as the spouse, estate, heir or legal representative of an **Insured.** This includes **Claims** that seek damages recoverable from marital community property and property jointly held by an **Insured** or the spouse. The lawful spouse (whether by statutory or common law), estate, heirs and legal representatives of an **Insured** are not **Insureds** when the **Claim** at issue arises from any

actual or alleged wrongful act of the lawful spouse, estate, heirs and legal representative of an **Insured.**

C. **PEO Client Company** and all entities that are identified in a Related Entity addendum to the Client Services Agreement are **Insured** but solely for **PEO Client Company Claim(s).**

## IV.   REPORTING and NOTICE

It shall be a condition precedent to **our** obligations under this policy that the Insureds comply with all of the following conditions.

**DUTIES IN THE EVENT OF AN INCIDENT, CLAIM OR SUIT**

1. **Notice of incident** – The **PEO Client Company** shall give the **Named Insured's** Legal Department or Human Resources Business Partner assigned to the **PEO Client Company** written notice, via facsimile, electronic mail, or overnight mail, as soon as practicable after an **Insured** becomes aware of any incident which is likely to give rise to a **Claim** covered by this policy. Such notice shall include as much detail as possible and shall include, to the extent possible:

   a. the identity of the person(s) alleging **Discrimination**, **Wrongful Termination**, **Sexual Harassment** or **Workplace Torts**;

   b. the identities of the **Insured(s)** who allegedly committed the **Discrimination**, **Wrongful Termination**, **Sexual Harassment** or **Workplace Torts** and any witnesses;

   c. the date the alleged incident took place

   Notice of such an incident likely to give rise to a **Claim** nevertheless does not constitute a **Claim** being made.

2. If a **Claim** is made or suit is brought against any **Insured**, the **PEO Client Company** must:

   a. immediately record the specifics of the **Claim** and the date received; and

   b. notify the **Named Insured's** Legal Department or Human Resources Business Partner assigned to the **PEO Client Company** in writing, via facsimile, electronic mail or overnight mail, as soon as practicable within the **Policy Period**; but no later than 30 days after the expiration date of the **Policy Period**; and prior to the termination of the **Client Services Agreement**

   c. immediately send the **Named Insured's** Legal Department or Human Resources Business Partner assigned to the **PEO Client Company** copies of any demands, notices, summonses or legal papers received in connection with the **Claim**;

   d. authorize **us** to obtain records and other information;

   e. cooperate with **us** in the investigation, settlement or defense of the **Claim**; and

   f. assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to any **Insured** because of injury or damage to which this insurance may also apply.

## V.   EXCLUSIONS

**A.** **Workers' Compensation.** This policy does not cover any obligation under a workers' compensation, disability benefits or unemployment compensation law, or any similar law. This exclusion shall not apply to a **Claim** brought by a **Worksite Employee(s)** alleging **Wrongful Termination** or retaliation of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such statute, law, rule or regulation.

**B.** **Contractual Liability**. This policy does not cover any **Loss Amounts** which the **Insured** is obligated to pay by reason of the assumption of another's liability for an **Insured Event** in a contract or agreement, provided, this exclusion shall not apply to a **PEO Client Company Claim.**

**C.** **Employee Retirement Income Security Act.** This policy does not cover any liability imposed on the **Insured** under the Employee Retirement Income Security Act of 1974, Public Law 93-406, or any amendments thereto ("ERISA").        Notwithstanding the preceding statement, a **Claim** made by an **Employee(s)** against the **Insured** alleging **Wrongful Termination, Discrimination** or **Workplace Torts** (including retaliation in violation of Section 510 of ERISA) shall be covered. However, **we** will not pay as **Loss Amounts** the benefits, pensions, insurance or other rights sought by an **Employee(s)** under any ERISA benefit plan unless the loss is caused by an **Insured Event**.

**D.** **Strikes and Lockouts.** This policy does not cover any **Loss Amount(s)** or costs arising out of or associated with a lockout, strike, picket line, replacement or other similar actions in connection with labor disputes or labor negotiations. This exclusion shall not apply to a **Claim** brought by an **Employee(s)** alleging **Wrongful Termination** or retaliation as a result of strike activity or union involvement.

**E.** **W.A.R.N. Act.** This policy does not cover any liability arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), or any amendment thereto, or any similar federal, state or local law. This exclusion shall not apply to a **Claim** brought by an **Employee(s)** alleging **Wrongful Termination** or retaliation of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such statute, law, rule or regulation.

**F.** This policy does not apply with respect to liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person.

**G.** This policy does not cover any liability alleged to be owing under, or arising out of, or related to an express contract of employment or an express obligation to make payments.

**H.** **Wage & Hour Violations.** This policy does not cover any **Loss Amounts** or costs arising out of or associated with any alleged violation of the obligations or duties pursuant to the Fair Labor Standards Act (except the Equal Pay Act) and any other law concerning wage and hour practices, including, but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices. This exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insureds** on account of the claimant's exercise of rights pursuant to any such law.

**I.** This policy does not cover **Loss Amounts** that a **PEO Client Company** is legally obligated to pay because of termination of a **Client Services Agreement.**

**J.** **Business Disputes.** This policy does not cover Loss Amounts arising from, relating to or in any way involving a dispute among current, former or alleged owners, shareholders, members, partners, joint-ventures, investors in or holders of any other form of equity or ownership interest in a business entity, venture or enterprise, including agents, heirs, executors, administrators, predecessors, successors, assigns, representatives and attorneys of

such parties, in any way involving the alleged rights and/or responsibilities associated with such ownership or business interests ("Business Disputes"), or to Insured Events arising from, directly or indirectly, or relating to in any way in whole or in part from such Business Disputes.

**K. Breach of CSA.** Any **PEO Client Company**'s misrepresentation to the **Named Insured** in its application process for a **Client Services Agreement** shall be deemed a breach of the **Client Services Agreement**, and there shall be no coverage for the **PEO Client Company** and all entities named in a Related Party Addendum to the Client Services Agreement for any **Claim** involving any person, fact, circumstance, transaction, cause, or event that is the subject of the misrepresentation.

**L. Prior Knowledge.** This policy does not cover any **Loss Amounts** based upon, arising out of or attributable to any **Insured Event** which could reasonably have been expected to result in a **Claim**, if on or before the inception date of the **Client Services Agreement**, the **PEO Client Company's** management or Supervisory Employee(s), as defined in Section VII., or the PEO Client Company's corporate legal or human resource departments, knew of such **Insured Event**.

**M. Biometric Information Claim**. This policy does not cover any **Loss Amount** or **Defense Costs** based upon, arising out of or attributable to any **Biometric Information Claim**.

## VI.   LIMITS OF INSURANCE

**A.** The Amount shown in the Declarations as Each **PEO Client Company** Sublimit is the most **we** will pay on behalf of each **PEO Client Company** and all entities that are identified in a Related Entity addendum to the Client Services Agreement for all **PEO Client Company Claims,** regardless of the number of claimants or **Insureds** against whom such **PEO Client Company Claim(s)** are made during each **Policy Period**. The Each **PEO Client Company Sublimit** is contained within and limited by the total policy period limit and is not in addition to the total policy period limit. **The** Each **PEO Client Company Sublimit** applies on an annual basis.

**B. Total Policy Period Limit.**

Subject to the Each **PEO Client Company** Sub-Limit, the amount shown as the Total **Policy Period** Limit in Item 3. III. of the Declarations is the most **we** will pay under this policy for all **Claims** made or brought during the **Policy Period**.

## VII.   DEFINITIONS

**A. Claim** means a **PEO Client Company Claim**

**B. Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement, defense of a specific **Claim**, including attorney fees and expenses, the cost of legal, administrative, or alternative dispute resolution proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the Limit of Insurance that applies(**we** have no obligation to furnish such bonds), all reasonable expenses that any **Insured** incurs at **our** request while helping **us** investigate or defend a **Claim** and, subject to Section II, C of this policy, all costs taxed against any **Insured** in a suit.

Salaries and expenses of any **Insured's** employees or **Worksite Employee(s)** shall not be deemed to be covered **Defense Costs** except that the Self-Insured Retention will be reduced by $5,000 for the in-house preparation by the **Named Insured,** or by any law firm assigned by the **Named Insured,** of a response to any governmental agency involving a **Claim** regarding an **Insured Event** (e.g., Equal Employment Opportunity

Commission position statement). This $5,000 reduction applies for each **Claim** involving an **Insured Event**.

**Defense Costs** are included within, and are not in addition to, the applicable Limits of Insurance

C. **Discrimination** means termination of an employment relationship or a demotion or a failure or refusal to hire or promote or otherwise to take any action against any individual with respect to his or her compensation, terms, conditions, privileges or opportunities of employment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation or other protected category or characteristic established pursuant to any applicable United States federal, state, or local statute or ordinance.

D. **Insured Event** means (1) **your Worksite Employee** or former **Worksite Employee**, or an applicant for employment with **you**, alleging **Discrimination** by an **Insured**, or (2) **your Worksite Employee** or former **Worksite Employee** alleging **Sexual Harassment** by an **Insured**, or (3) **your** former **Worksite Employee** alleging **Wrongful Termination** by an **Insured,** or (4) **your Worksite Employee** or former **Worksite Employee** or an applicant for employment with **you** alleging **Workplace Torts** by an **Insured.** Alleging means lodging an oral or written complaint or charge with **your** management or **Supervisory Employee(s)** or with **your** corporate legal or human resource departments. **Supervisory Employee** means an officer or director of a **PEO Client Company,** the **Named Insured** or any **Employee** of an **Insured** who has authority to supervise the performance of other **Employees** of an **Insured**.

E. **Loss Amount** means all forms of compensatory damages, monetary damages, statutory damages, multiplied damages, punitive or exemplary damages, judgments, settlements, statutory attorney fees, and **Defense Costs** arising out of **Claim(s)** alleging **Discrimination, Sexual Harassment, Wrongful Termination, or Workplace Torts.**

It is agreed that the law of the jurisdiction most favorable to the insurability of punitive or exemplary damages shall control for the purpose of resolving any issue or dispute regarding whether these damages are insurable under this policy; provided however that **Loss Amount** shall not include amounts deemed uninsurable under the law in the jurisdiction most favorable to the **Insured**.

**Loss Amount** shall not include taxes, criminal fines or penalties.

**Loss Amount** also shall not include payment of insurance plan benefits claimed by or on behalf of any retired **Worksite Employee**, or that a claimant would have been entitled to as a **Worksite Employee** had the **Insured** provided the claimant with a continuation of insurance.

**Loss Amount** also shall not include amounts awarded pursuant to a labor or grievance arbitration pursuant to a collective bargaining agreement.

**Loss Amount** shall not include compensation earned by the claimant in the course of employment but not paid by the **Named Insured** or the **PEO Client Company** and all entities that are identified in a Related Entity Addendum to the Client Services Agreement including but not limited to unpaid salary, overtime, bonus and wages. **Loss Amount** also shall not include vested and non-vested stock options, retirement benefits, severance pay, prerequisites, fringe benefits, vacation days or sick days.

**Loss Amount(s)** do not cover those amounts arising from an express or written employment agreement.

F. **Policy Period** means the period of time commencing with the Inception Date shown in Item 2 of the Declarations and the earlier of the termination date shown in Item 2 of the

Declarations or the date on which this policy is terminated by cancellation by **you** or by **us**.

G. **Sexual Harassment** means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that: (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance or creates an intimidating, hostile, or offensive work environment.

H. **Workplace Torts** including without limitation retaliation, defamation, infliction of emotional distress, invasion of privacy, wrongful discipline, wrongful reference, failure to grant tenure, employment related misrepresentation, wrongful failure to promote, wrongful deprivation of career opportunity or wrongful demotion, or negligent hiring, negligent retention, negligent evaluation, negligent supervision, negligent training, workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications by any **Insured**

I. **Wrongful Termination** means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment. Wrongful Termination shall include but shall not be limited to breach of an implied employment contract, retaliation, or the filing of a Claim under federal, state, local or foreign "whistleblower" laws.

J. **PEO Client Company** means an entity that has entered into a **Client Services Agreement** with the **Named Insured**, thus becoming a client of the **Named Insured** and the worksite employer of the **Worksite Employee(s)**.

K. **PEO Client Company Claim** means a written demand or notice received by an **Insured** alleging an **Insured Event** in which damages likely to be covered by this policy are alleged. **Claim** includes a civil action, an administrative proceeding, alternative dispute resolution proceeding, or an action brought by a person or entity acting on behalf of a **Worksite Employee(s)**, or applicant(s) for employment as a **Worksite Employee(s)** or former **Worksite Employee(s** to which **you** must submit or to which **you** submit with **our** consent. **Claim** shall include a proceeding for injunctive or non-monetary relief. **Claim** shall not include labor or grievance arbitration subject to a collective bargaining agreement. A class action lawsuit is considered one **Claim.**

L. **Worksite Employee** means a person co-employed by the **Named Insured** and a **PEO Client Company** and covered by a **Client Services Agreement**, engaged to perform services on behalf of the **PEO Client Company's** business. **Worksite Employee** also includes a Self Employed Individual or a Non-Paid Owner who has signed the **Named Insured's** "Self-Employed Individual and Non-Paid Owner Participation Addendum" to the **Client Services Agreement**.

M. **Client Services Agreement** means a contractual agreement between the **Named Insured** and a **PEO Client Company** which defines the responsibilities of the **Named Insured** and a **PEO Client Company** with respect to the **Named Insured's** provision of professional employer organization (PEO) services to a **PEO Client Company**. Pursuant to the **Client Services Agreement**, the **PEO Client Company** is primarily responsible for supervision over the work product, and the **Named Insured** assumes certain employer and administrative responsibilities with respect to payroll, benefits, and other human resource functions on an ongoing bases.

N. **Biometric Information** means any information used to identify a natural person based on an anatomical scan or any record of biological pattern or characteristic, including but not limited to such natural person's retina or iris scan, fingerprint, voiceprint, or any record of hand or face geometry. **Biometric Information** shall not include any information that is protected or regulated pursuant to the Health Insurance Portability and Accountability Act of 1996.

**Biometric Information Claim** means a **Claim** brought or maintained against an **Insured** based upon, arising out of or attributable to a violation of any federal, state or local law that regulates or restricts the storage, collection or use of **Biometric Information**.

## VIII.    SELF-INSURED RETENTION

A.  **Our** obligation under the coverage provided by this policy to pay **Loss Amounts** on behalf of any **Insured** shall apply only to **Loss Amounts** in excess of the Self- Insured Retention as stated in the Declarations and subject to the Limits of Insurance stated in the policy. The terms of this policy with respect to **our** rights and duties relative to investigation, settlement and duty to defend apply in excess of the application of the **Insured's** Self-Insured Retention, subject to the provisions outlined in Section II.B.

B.  The Self-Insured Retention amount is as follows: $100,000 per **Claim** for settlement or judgments and $100,000 per **Claim** for **Defense Costs**. In the event that a **Claim** is brought against multiple **Insureds** arising out of the same **Insured Event**, the Self-Insured Retention will apply as if there was a single **Claim**. In the event a **Claim**(s) brought by multiple claimant arises out of the same facts and circumstances, the Self-Insured Retention will apply as if there was a single **Claim.** In the event that a single **Claim** arising out of the same **Insured Event** is afforded coverage under this Coverage Part and Coverage Part A, the Self-Insured Retention under this Coverage Part shall apply.

## IX.    CONDITIONS

### A.  OTHER INSURANCE

1.  **Primary Insurance**-Unless expressly written to be excess over other applicable insurance, it is intended that this insurance be primary with respect to **Wrongful Termination, Discrimination, Sexual Harassment** and **Workplace Torts**.

2.  **Excess Insurance** – When this insurance is specifically written to be excess of other insurance, **we** will have no duty to defend any **Claim** that any other insurer has a duty to defend until such time as the underlying insurance is exhausted by payment of **Loss Amounts** that would, in the absence of such insurance be recoverable under this policy. When this policy is excess:

    a.  This policy will not follow form to any underlying insurance and only the terms and conditions of this policy shall apply to any **Claim** in the determination of coverage and **Loss Amounts** to be paid, if any;

    b.  **We** will pay only **Loss Amounts**, in excess of and after exhaustion of the underlying insurance limits, and any deductible or self-insured retention in connection with the underlying insurance; and

    c.  This policy is intended to be excess of any valid and collectible insurance obtained directly by the **PEO Client Company** ("Client Company Primary Policy"). The deductible or self-insured retention applicable to the **Claim** pursuant to this policy shall be reduced by any applicable deductible or self-insured retention paid for the **Claim** by the **PEO Client Company**, or by payment on said **Claim** made under the Client Company Primary Policy.

### B.  VOLUNTARY PAYMENTS

No **Insured** shall, except at the **Insureds'** sole cost, make any payment, assume any obligation or incur any expense without **our** consent.

### C. REPRESENTATIONS

By accepting this policy, **you** agree that:

1. the statements in the Application and Declarations and to the **Named Insured** in the Request for Proposal regarding the **PEO Client Company's** knowledge of any incidents, facts or circumstances which may result in a **Claim** are accurate and complete.

2. those statements are based upon representations **you** made to us;

3. **we** have issued this policy in reliance upon **your** representations; and

4. the representations made are binding on all **Insureds**.

### D. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any **Insured** has rights to recover all or part of any payment **we** have made under this policy, those rights are transferred to **us**. The **Insured** must do nothing after an **Insured Event** or a **Claim** to impair them. At **our** request, the **Insured** will transfer those rights to **us** and help **us** enforce them.

### E. BANKRUPTCY

The bankruptcy, insolvency or inability to pay of an **Insured** or of an **Insured's** estate will not relieve **us** of **our** obligations under this policy. However, neither shall such bankruptcy, insolvency or inability to pay increase **our** liability with respect to the Self-Insured Retention, nor in any other way.

### F. CANCELLATION

1. The **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

2. we may not cancel this policy except for nonpayment of premium

3. If **we** cancel this policy for nonpayment of premium, **we** will mail or deliver to the Vice President of Risk Management of the **Named Insured** at 10200 SW 72nd Dr., Miami, FL 33173 or its last mailing address known tprior o us written notice of cancellation at least 10 days before the effective time of cancellation.

4. Notice of cancellation will state the effective time of cancellation. The **Policy Period** will end at that time.

5. If this policy is cancelled, **we** will send the **Named Insured** any premium refund due in due course. If **we** cancel, the refund will be pro rata. If the **Named Insured** cancels, the refund will be on the customary short rate basis. The return or tender of a return premium shall not be a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

6. If notice is mailed, receipt by the Vice President of Risk Management of the **Named Insured** at 10200 SW 72nd Dr., Miami, FL 33173 or its last known address will be sufficient proof of notice

7. If any law controlling requires a longer period of notice by **us**, **we** will give the longer notice.

### G. CHANGES

This policy contains all the agreements between **you** and **us** concerning the insurance afforded. The **Named Insured** shown in the Declarations is authorized by all other **Insureds** to negotiate changes in the terms of this policy with **us** and to receive and give all notices under this policy. This policy's terms can be amended or waived only by endorsement issued by **us** and made part of the policy.

## H. PREMIUMS

The **Named Insured** shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. will be the payee for any return premiums **we** pay.

## I. LEGAL ACTION AGAINST US

1. No person or organization has a right under this policy:

   a. to join **us** as a party or otherwise bring **us** into a suit asking for damages from any **Insured**; or

   b. to sue **us** on this policy unless all of its terms have been fully complied with.

2. A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against the **Insured** obtained after an actual trial, but **we** will not be liable for any **Loss Amount** that is not payable under the terms of this policy or that is in excess of the applicable Limits of Insurance. An agreed settlement means a settlement and release of liability signed by **us**, the **Insured** and the claimant or the claimant's legal representative.

## J. SERVICE OF SUIT

It is agreed that in the event of **our** failure to pay any amount claimed to be due hereunder, **we**, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process may be made upon General Counsel, Law Department, Zurich American Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against **us** upon this policy, **we** will abide by the final decision of such court or of an appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, **we** hereby designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as **our** true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of **you** or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the General Counsel, Law Department, Zurich American Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## K. CHOICE OF VENUE; CHOICE OF LAW

This policy shall be construed in accordance with and governed by the laws of the State of California, without regard to conflict of law principles of any state.  The parties agree that the Superior Court of California, County of Los Angeles -  Central District is an appropriate venue for any  legal  proceedings concerning disputes over the construction or application of the  policy.

**Insured Name:**   ADP Total Source,
Inc. **Policy Number:** EPL 6541325-13
**Effective Date:**   08/01/2023



**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

Include in Premium

\*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"),  as amended,  we  are required to provide  you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if  applicable.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government may pay a share of insured losses resulting from  an act  of terrorism.  The  federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention. The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA. TRIA is scheduled to expire on December 31,  2014.

**C.  Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case  insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the  Secretary of Treasury.

**D.  Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from  acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E.  Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of  the Treasury, in concurrence with the Secretary of State and the Attorney General of the United  States:

1.  to be an act of terrorism;

2.  to be a violent act or an act that is dangerous to human life, property or infrastructure;

3.  to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel  based principally in  the  United  States, on which United States income tax is paid and whose insurance coverage is subject  to regulation in the United States), or the premises of a United States mission; and

4.  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared  by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance  subject to TRIA, do not exceed  $5,000,000.

Copyright © 2007 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

U-GU-630-C CW (12/07)
Page 1 of 1

**Endorsement # 01**



## Worldwide Territory Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Additional Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | ---- | ---- |

**Named Insured:** ADP Total Source, Inc.

**THIS ENDORSEMENT CHANGES COVERAGE PARTS A, B and C OF THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under:

**EPL PEO SELECT
EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY
CLAIMS-MADE**

It is agreed that:

Coverage provided under this policy shall apply to **Claims** brought against the **Insured** anywhere in the world, to the extent legally permissible.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

**Endorsement # 02**



## Coverage Territory Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Additional Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | ---- | ---- |

**Named Insured:** ADP Total Source, Inc.

**THIS ENDORSEMENT CHANGES COVERAGE PARTS A, B and C OF THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under:

**EPL PEO SELECT
EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY
CLAIMS-MADE**

It is agreed that:

If coverage for a **Claim** or suit under this policy is in violation of any of the United States of America's economic or trade sanctions, laws, or regulations, including, but not limited to, sanctions, laws, and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that **Claim** or suit shall be null and void.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

M-ADP-MAN-2   (07/21)
Page 1 of 1

**Endorsement # 03**



**PEO Referral Requirements and Additional PEO Client Company Coverage Endorsement**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Additional Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | ---- | ---- |

**Named Insured:** ADP Total Source, Inc.

**THIS ENDORSEMENT CHANGES COVERAGE PARTS B and C OF THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under:

**EPL PEO SELECT
EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY
CLAIMS-MADE**

In consideration of the premium charged it is understood and agreed that the following applies to Coverage Parts B and C.

It is understood and agreed that any **PEO Client Company** evidencing any of the following risk characteristics must be identified and specifically referred by the **Named Insured** to **us** for underwriting review and approval prior to the **PEO Client Company** qualifying for any coverage under this policy. The referral criteria are as follows:

- **PEO Client Companies** with greater than 400 employees

- **PEO Client Companies** with five (5) or more Employment Practices Liability claims in the last three (3) years

- **PEO Client Companies** with a paid Employment Practices Liability claim in excess of $25,000 (not including defense costs and legal fees) in the last three (3) years

- **PEO Client Companies** for which the Limits of Liability under Coverage Part B or C will be $2,000,000

- **PEO Client Companies** for which **Wrongful Business Environment** insurance is sought under Coverage Parts B or C.

It is further understood and agreed that any **PEO Client Company**'s misrepresentation to the **Named Insured** in its application process for a **Client Services Agreement** shall be deemed a breach of the **Client Services Agreement**, and there shall be no coverage for the **PEO Client Company** and all entities named in a Related Party Addendum to the Client Services Agreement for any **Claim** involving any person, fact, circumstance, transaction, cause, or event that is the subject of the misrepresentation.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

M-ADP-MAN-3  (07/21)
Page 1 of 1

EXHIBIT A, Page 58

**Endorsement # 04**



**Risk Management Services Endorsement**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Additional Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | ---- | ---- |

**Named Insured:** ADP Total Source, Inc.

**THIS ENDORSEMENT CHANGES COVERAGE PART A OF THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under:

**EPL PEO SELECT**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**CLAIMS-MADE**

Zurich American Insurance Company provides the **Named Insured** with access to its Employment Practices Loss Control Services. The provisions of these services amend the policy as follows:

**I.**   Item 3 of The Declarations is amended by adding the following:

**IV. Risk Management Service Insuring Agreement: $2,500 Aggregate Each Policy Period**

*The Limit of Liability set forth for this Insuring Agreement is in addition to any other Limits of Liability, and not part of any other Limits of Liability set forth in this policy.*

**II.**   The following is added to Section II, INSURING AGREEMENTS: D. RISK MANAGEMENT SERVICE COVERAGE

**We** shall pay on behalf of the **Named Insured** all **Risk Management Fees** for any **Risk Management Service(s)** utilized by the **Named Insured** during the **Policy Period** for which written notice is first given to the **us** during the **Policy Period.**

**III.**   Section VII. DEFINITIONS, is amended by adding the following definitions:

**Risk Management Advisor** means the law firm of Littler Mendelson, P.C. or any of **our** panel counsel law firms specifically designated for defending employment practices liability allegations.

**Risk Management Service** means services provided by a **Risk Management Advisor** in connection with training or advising the **Named Insured** and/or its **Employees** with respect to minimizing potential loss or liability due to any of the following employment-related matters:

1.  Current legislative, legal and demographic issues and trends affecting human resource management and employment practices;

2.  Harassment and discrimination avoidance;

3.  Compliance with wage and hour laws;

4. Developing an appropriate process around conducting reductions in force, terminations or other employment actions;

5. Document retention and e-discovery issues;

6. Disciplining and motivating employees;

7. Ethics and workplace governance;

8. Recruitment, selection and hiring procedures; and

9. Audit or development of employment handbooks, applications, policy statements and action plans.

**Risk Management Services** shall not constitute a **Claim** or **Insured Event** under the policy.

**Risk Management Fees** means the fees charged by a **Risk Management Advisor** in connection with a **Risk Management Service**, provided however, that **Risk Management Fees** shall not include any wages, salaries, fees, expenses or benefits of the directors, officers or **Employees** of the **Named Insured** or any other internal or overhead cost or expense of the **Named Insured**.

IV.    Section V, LIMITS OF INSURANCE is amended by adding the following: A. Paragraph A, Limits of Liability, is amended by adding the following:

**Our** maximum liability for all **Risk Management Fees** for each **Policy Period** shall not exceed the Limit of Liability set forth in Item 3.IV. of the Declarations for the Risk Management Service Insuring Agreement ("Risk Management Service Limits of Liability"). The Risk Management Service Limits of Liability are in addition to and do not erode any other Limits of Liability set forth in this policy.

V.    Section VIII, SELF-INSURED RETENTION is amended by adding the following after the last paragraph:

E. No Self-Insured Retention shall apply to the **Risk Management Service** coverage provided by this policy.

VI.    The following is added to Subsection X.A, DUTIES IN THE EVENT OF CLAIM OR SUIT AND OPTIONAL CIRCUMSTANCES REPORTING:

Notice of **Risk Management Service(s)**

The **Named Insured** shall give written notice to **Us** of any **Risk Management Service** as soon as practicable; but in no event later than 30 days, after the **Named Insured** retains a **Risk Management Advisor**. Such notice shall include a description of the **Risk Management Services,** the amount of **Risk Management Fees** incurred, and the name of **Risk Management Advisor** retained for such services.

Notice to **Us** of a **Risk Management Service** shall not constitute notice of a **Claim** or notice of potential **Claims**, unless such notice expressly states so and otherwise complies with those policy provisions.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

**Endorsement # 05**



**Pro-rata Cancellation Endorsement**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Additional Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | ---- | ---- |

**Named Insured:** ADP Total Source, Inc.

**THIS ENDORSEMENT CHANGES COVERAGE PARTS A OF THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under:

**EPL PEO SELECT
EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY
CLAIMS-MADE**

It is agreed that:

Subsection X.G.5. is replaced with the following:

5. If this policy is cancelled, **we** will promptly send the **Named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **Named Insured** cancels, **we** shall retain a minimum earned premium of 25% of premium. If the **Named Insured** cancels this policy, the earned premium will be computed in accordance with the customary pro- rata table and procedure, or the minimum earned premium stated herein, whichever is greater. The return or tender of a return premium shall not be a condition precedent to the cancellation becoming effective at the time stated in the cancellation notice.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

M-ADP-MAN-5   (07/21)
Page 1 of 1

**Endorsement # 06**

# Excess of Other Insurance Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Additional Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325 14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | ----- | ------ |

**Named Insured:**      ADP TotalSource, Inc.

**THIS ENDORSEMENT CHANGES COVERAGE PARTS  B and C OF THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under:

**EPL PEO SELECT**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**CLAIMS-MADE**

It is agreed that:

Coverage under this policy is written specifically as excess insurance according to Section IX.A. 2 of Coverage Parts B &C of this policy for the **PEO Client Companies** listed in this Endorsement No. 6, provided that such **PEO Client Companies** must continuously maintain valid and collectible Employment Practices Liability insurance. If such coverage is not continuously maintained, then no coverage will be available under this policy for such **PEO Client Companies**. Furthermore, any reference to leased employees in any "Other Insurance" provision of the primary policy does not apply to **Worksite Employees** as  defined in Section VII.L. Definitions of this policy.

Effective 05/31/2015
A.J.D. Holding Company
2181 Enterprise Parkway
Twinsburg, OH 44087

Effective 06/01/2015
All Web Leads, Inc,
7300 FM 2222, Bldg B, Suite 100
Austin, Texas 78730

Effective 12/31/2016
Bank of East Asia LTD
540 Madison Ave
New York, NY 10022

Effective 04/01/2016
Bird Bowl Investments, LLP.
9275 Bird Road
Miami, FL 33165

Effective 04/04/2013
Ginarte, O'Dwyer, Gonzalez, Gallardo & Winograd, L.L.P
400 Market Street
Newark, NJ 07105

Effective 01/01/2017
Joseph Brent Novak, D.M.D., P.A. 65
CR 542 West
Bushnell, FL 33513

Effective 01/29/2015
New Trier Aquatics
7 Happ Road Room F124
Northfield, IL 60093

Effective 08/01/2009
Newman Myers Kreines Gross Harris, P.C. f.k.a. Newman, Fitch, Altheim, Myers, PC
40 Wall Street
26th floor
New York, NY 10005-2101

Effective 11/13/2016 - Terminated 09/05/2021
Portables Unlimited Inc.
136 First Street
Nanuet, NY 10954

Effective 01/01/2014
Riva Ridge Capital Management, LP
55 Fifth Avenue, 17th Floor
New York, NY 10003

Effective 06/24/2014
Rosica Mulhern Associates, Inc.
95 Route 17 South
Suite 202
Paramus, NJ 07652

Effective 06/19/2013
Telecom Service Bureau
4352 SE 95th St
Ocala, FL 34480

Effective 07/01/2013
The Millennium Promise Alliance
475 Riverside Drive, Suite 1040
New York, NY 10115

Effective 08/01/2014
TOG Insurance Brokerage Group, Inc.
777 Westchester Ave, Suite  206
White Plains, NY 10604

Effective 10/22/2013
Tokistar Lighting, Inc
1015 East Discovery
Lane Anaheim, CA
92801

Effective 12/19/2016
Valken, Inc.
1 Hawk Ct
Swedesboro, NJ 08085

Effective 09/01/2011
Volex, Inc.
915 Tate Boulevard SE #130
Hickory, NC 28602

Effective 9/15/2015
Votenet Solutions, Inc.
1420 K Street, NW Suite 200
Washington, DC 20005

Effective 12/01/2015 - Terminated 12/20/2021
Webimax LLC
2 Aquarium Drive, Suite 140
Camden, NJ 08103

Effective 01/01/2010
Wenner-Gren Foundation for Anthropological
Research, Inc. 470 Park Avenue South
New York, NY 10016

Terminated 12/26/2021
Bayside Refrigeration Inc.
2426 46th Street
Astoria, NY 11103

Effective 05/17/2020
Exalt Youth
17 Battery Place
3rd Floor #307
New York, NY 10004

Effective 09/26/2020
Ice Husky Inc
790 Sandoval Way
Hayward, CA94544

Effective 10/28/2020
Bella Investment Group, LLC
2409 N Fourth St 201   Flagstaff, AZ 86004

Effective 09/30/2020
Abbey Management Co LLC
12447 Lewis St. Ste. 203
Garden Grove, CA 92840

Effective 09/30/2020
Abbey Engineering Services, LLC
12447 Lewis St. Ste. 203
Garden Grove, CA 92840

Effective 12/16/2020
Triangle Insights Group LLC
512 S. Mangum Street, #404
Durham, NC 27701

Effective 02/22/2020
Akoustis, Inc.
9805 Northcross Center Ste A
Huntersville, NC 28078

Terminated 04/01/2021
R V Nuccio Associates Insurance Brokers Inc.
10148 Riverside Dr
Toluca Lake, CA 91602

Effective 01/01/2021
Genexa Inc.
949 West Marietta St NW Suite X-106 Atlanta,
GA 30318

Effective 02/08/2021
Real Estate Growth Advisors LLC
325 Broad St
Red Bank, NJ 07701

Effective 03/01/2021
A.C. Roman & Associates, Inc.
1350 RXR Plaza West Tower
Uniondale, NY 11556

Effective 10/22/2020 American
Gold Star Manor 3021 N. Gold
Star Drive Long Beach, CA 90810

Effective 05/24/2021
The Child Center of NY, Inc.
118-35 Queens Blvd 6th Floor
Forest Hills, NY 11375

Effective 12/17/2021
Center of Creative Arts
6880 Washington Ave
Saint Louis, MO 63130

Effective 1/1/2022
Ruane, Cunniff & Goldfarb LP.
9 W 57th Street Suite 5000
New York NY 10019

EXHIBIT A, Page 65

Effective 1/24/2022
MedAllies, Inc.
300 Westge Business Cent
Fishkill, NY  12524


Effective 12/23/2021
Mcleod Addictive Disease
Center Inc
515 Clanton Rd
Charlotte, NC 28217


Effective 3/14/2022
Gator Development Corp
7850 NW 146th Street 4th
Floor
Miami Lakes, FL 33016


Effective 08/01/2022
Digacore Consulting LLC
1980 Swarthmore Ave
Unit 6
Lakewood, NJ 08701


Effective 10/03/2022
AVG Employer, LLC
4301 Anchor Plaza Parkway, Suite 350
Tampa, FL 33634


Effective: January 21, 2023
The Social Spectrum Inc.
1118 Campus Drive, Morganville, NJ 07751


Effective  04/01/2023
Oak Beverages, Inc.
44 High Street, West Nyack, NY 10994


Effective 04/01/2023
Boening Brothers, Inc.
1098 NY-109, Lindenhurst, NY 11757


Effective 04/01/2023
Cedar Beverages, Inc.
1098 NY-109, Lindenhurst, NY 11757


Effective 05/09/2023
Superfly Marketing Group, LLC
72 Madison Ave, 2nd Floor New York, NY 10010


Effective 06/16/2023
The Modern Schoolhouse LLC
248 S. Mission DriveSan Gabriel, CA 91776


Effective: 09/02/2023
Affordable Housing Alliance, Inc.
3535 Route 66 Parkway 100, Building 4
Neptune, NJ 07753


EXHIBIT A, Page 66

Effective: 10/01/2023
Aspira Women's Health Inc.
12117 Bee Caves Rd Building 3, Suite
100 Austin, TX 78738


Effective: 11/13/2023
Princeton Electrical Makeover, LLC
3490 US Route 1 Building 16, Suite 1012
Princeton, NJ 08540


Effective: 11/10/2023
Rubin & Rothman LLC
1787 Veterans Highway
Central Islip, NY 11722


Effective: 04/16/2024
Lee Read Jewelers Inc.
650 E. Sonata Lane
Meridian, ID 83642

EXHIBIT A, Page 67

**Endorsement # 07**



**Insured Co-Defendant Endorsement**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Additional Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | ---- | ---- |

**Named Insured:** ADP Total Source, Inc.

**THIS ENDORSEMENT CHANGES COVERAGE PART B & C OF THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under:

**EPL PEO SELECT**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY**
**CLAIMS-MADE**

It is agreed that:

Effective 9/15/2014, **Section III. Who Is An Insured** is amended to add the following:

D. The following listed entity but only if and for so long as a covered **Claim** is made and continuously maintained against
ISL Employees Inc. and the listed entity as co-defendant in such **Claim**:

Integral Senior Living, LLC.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

M-ADP-MAN-7   (07/21)
Page 1 of 1

**Endorsement # 08**



# SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

U-GU-1191-A CW (03/15)

**Endorsement # 09**



# Specific Entity Exclusion

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | --- | --- |

**Policyholder:** ADP Total Source, Inc.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under:

**EPL PEO Select Employment Practices Liability Insurance Policy**

It is agreed that:

Section V, EXCLUSIONS, is amended to include the following:

It is understood and agreed that as of the effective date of this endorsement and solely with respect to Coverage Parts B and C, this policy does not provide coverage to San Francisco Federal Credit Union and all related entities that are identified in a Related Entity Addendum to the Client Services Agreement.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.

**Endorsement # 10**

# Runoff Coverage Endorsement
**(For Specific PEO Client Company(ies))**



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL-6541325-14 | 08/01/2023 | 08/01/2024 | 02/10/2023 | ███████ | n/a |

**Named Insured: ADP Total Source, Inc.**

**THIS ENDORSEMENT CHANGES COVERAGE PART(S) B and C OF THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**EPL PEO Select Employment Practices Liability Insurance Policy Claims Made**

It is agreed that:

I.    The following is added to the DECLARATIONS:

**Item 4.    Extended Reporting Period:**    From:    02/10/2023 To: 02/10/2026
12:01 A.M. local time at the address shown in Item 1.

II.   The **Named Insured** has purchased an **Extended Reporting Period** for the following **PEO Client Company(ies): Tallan, Inc.**.

III.  The following is added to Coverage Part(s) B and C of the policy:

X.    **EXTENDED REPORTING PERIOD**

The **Extended Reporting Period** set forth in Item 4 of the Declarations is the period during which any **Claim** first made and reported pursuant to Section IV shall be considered made during the **Policy Period**, but only with respect to **Claims** made against Tallan, Inc. arising out of actual or alleged **Insured Events** taking place prior to the expiration of the **Policy Period**.

The **Extended Reporting Period** will not take effect unless the additional premium is paid when due.

The Limits of Insurance that remain at the end of the **Policy Period** after payment of all **Loss Amounts** and **Defense Costs** made on account of **Claims** made during the **Policy Period** are not reinstated, renewed or increased for **Claims** first made or brought during the **Extended Reporting Period**. Any **Claim** first made or brought during the **Extended Reporting Period** will be deemed to have been first made on the last day of the **Policy Period**.

IV.   The following is added to Section VII. DEFINITIONS of Coverage Part(s) B and C of the policy:

**Extended Reporting Period** means the period of the extended coverage set forth in Item 4 of the Declarations.

**Interrelated Insured Events** means **Insured Events** that have as a common nexus, any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

V.    The following is added to Section V. EXCLUSIONS of Coverage Part(s) B and C of the policy:

The **Underwriter** shall not be liable for **Loss** for any **Claim** made against Tallan, Inc. based upon, arising out of or attributable to any actual or alleged **Insured Event** or **Interrelated Insured Events** taking place in whole or in part on or after 02/10/2023.

All other terms and conditions of the policy shall apply and remain the same.

M-EPL-2505N CW (02/23)
Page 1 of 1

**Endorsement # 11**

# Retention for Coverage Parts B and C Amended



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|
| EPL 6541325-14 | 08/01/2023 | 08/01/2024 | 08/01/2023 | n/a | n/a |

**Named Insured: ADP Total Source, Inc.**

**THIS ENDORSEMENT CHANGES COVERAGE PART(S) B AND C OF THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**EPL PEO Select Employment Practices Liability Insurance Policy Claims Made**

It is agreed that solely for the **PEO Client Companies** listed in the SCHEDULE in this endorsement:

I.   The first sentence of Subsection VIII.B. of Coverage Part B – Client Company Coverage – Other Than California is replaced with the following:

The Self-Insured Retention amount is as follows: $25,000 per **Claim** for settlement or judgments and $75,000 per **Claim** for **Defense Costs**.

II.  The first sentence of Subsection VIII.B. of Coverage Part C – Client Company Coverage – California is replaced with the following:

The Self-Insured Retention amount is as follows: $175,000 per **Claim** for settlement or judgments and $175,000 per **Claim** for **Defense Costs**.

III. Subsection VII.J. of Coverage Part B – Client Company Coverage – Other Than California and Coverage Part C – Client Company Coverage – California is amended by adding the following:

**PEO Client Company** shall also mean the companies listed in the SCHEDULE below:

| SCHEDULE |
|---|
| SBE Restaurant Group - effective 05.29.2023 |
| Altais Health Solutions - effective 12.17.2023 |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |

All other terms, conditions, provisions and exclusions of this policy remain the same.

EXHIBIT A, Page 72

M-EPL-2510N CW (06/23)
Page 1 of 1

SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
515 SOUTH FIGUEROA STREET, SUITE 1470
LOS ANGELES, CALIFORNIA 90071-3331
TEL (213) 996-4200 • FAX (213) 892-8322

**PROOF OF SERVICE**

**STATE OF , COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of . My business address is 515 South Figueroa Street, Suite 1470, Los Angeles, CA 90071-3331.

On October 28, 2024, I served true copies of the following document(s) described as **DECLARATION OF ADAM FAZIO IN SUPPORT OF DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c); EXHIBIT A** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☒      **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 28, 2024, at Los Angeles, California.

_Rose Hernandez_
_____
Rose Hernandez

[PROPOSED] ORDER GRANTING DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS

**SERVICE LIST**

Robert B. Jobe, Esq.
LAW OFFICE OF ROBERT B. JOBE
100 Bush Street, Suite 1300
San Francisco, CA 94104
Tel.: 415-956-5513
Email: bob@jobelaw.com

SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
515 SOUTH FIGUEROA STREET, SUITE 1470
LOS ANGELES, CALIFORNIA 90071-3331
TEL (213) 996-4200 • FAX (213) 892-8322

2                                                    Case No. 4:24-cv-06325-YGR